THE TOWN OF SHARON *v.* JOEL SIMONS.

[IN CHANCERY.]

*Trust. Chancery.*

A devise of property was made to one in trust to be applied towards the support of an insane pauper, as the trustee should judge right and equitable, provided the town of S., on which the pauper was chargeable, should pay a reasonable sum yearly for the same purpose. A dispute having arisen between the town and the trustee as to the respective amounts they should annually pay towards the pauper's support, the town brought a bill in chancery, praying that the trustee might be decreed to pay for the pauper's maintenance, a sum equal to the annual interest of the trust funds in his hands, and also such portion of the principal as the court should deem proper.

*Held,* that the town had no such interest in the trust fund as would enable them to sustain the bill; that the *pauper* and not the town, was the *cestui que trust,* and in case of the delinquency of the trustee, she, by her guardian, was the proper person to call him to account.

*Held,* also, that the terms of the devise gave to the trustee a *discretion* as to how much he should pay towards the pauper's support; and that when that discretion had been honestly exercised by him, as appeared to have been done in this case, a court of chancery could not interfere to examine the correctness of his decision.

APPEAL from a decree of the court of chancery. The bill was brought to compel the defendant to pay out of certain trust funds in his hands, a just proportion of the expenses of the support of Azuba Simons, an insane pauper.

It appeared that the town of Sharon had for several years been chargeable with the partial support of Azuba Simons, an insane pauper, whose legal settlement was in that town. The annual expense of her support was from fifty-six to sixty dollars. Previous to the death of the pauper's mother, Elizabeth Simons, which occurred in 1850, the town of Sharon had paid a portion of this expense, varying from twenty-five to forty-five dollars per annum, and Elizabeth Simons had paid the remainder. Elizabeth Simons devised all her property to the defendant, in trust, for the purpose of providing for Azuba. The language of the devise was as follows: " My son Joel is hereby directed to apply such sum as he shall judge right and equitable, yearly, for her support, provided the town of Sharon shall pay a reasonable sum yearly, so that my daughter can live with her friends." Under this devise the defendant received, as such trustee, the sum of about five hundred and fifty dollars, which he put out at interest, and at the time this suit was brought, had been receiving interest thereon for about two years.

The will also provided that if Azuba became sane, she was to have the then remaining balance of the property of her mother for her own use, and that when she died any balance remaining in the defendant's hands should belong to the heirs of the testatrix.

After the death of Elizabeth Simons, the defendant refused to pay a greater sum towards the annual support of the pauper than the balance of such expenses after deducting forty dollars, which last named sum he insisted that the orators should pay. He claimed that Azuba's insanity was increasing so that the expense of taking care of her would in future be materially increased, and that if he paid a larger sum annually, for the present, than such balance, the trust fund would probably be exhausted before her death.

Town of Sharon *v.* Simons.

The orators, on the other hand, insisted that the defendant should pay every year, towards her support, at least a sum equal to the annual interest of the trust funds in his hands.

The result of this dispute was that the defendant finally refused to pay anything for her support unless the orators would pay forty dollars per annum. Finally, an order of removal of the pauper was granted from the town of Pomfret, where she had been previously kept by a relative, hired by the orators and the testatrix for that purpose, to the town of Sharon, after which the orators paid the entire expense of her maintenance, directing the person who took care of her to receive nothing from the defendant towards her support, unless he would pay the amount they claimed he ought to pay.

The orators prayed, in their bill, that the defendant might be decreed to pay to the orators, or such person as the court should direct, the annual interest accruing upon said trust fund, and such portion of the principal, as to the court should seem proper, to be applied towards the support of the said Azuba, and also for general relief.

The defendant, in his answer, among other things, swore that he considered it "right and equitable" to pay out of the trust funds in his hands, such portion of the annual expense of the pauper's maintenance as should remain unpaid after the orators had paid forty dollars per annum therefor, which sum he considered it reasonable that the orators should pay for that purpose.

The chancellor, at the May Term, 1856, dismissed the bill with costs to the defendant, and the orators appealed.

*Warren C. French,* for the orators.

This is a peculiar trust, requiring the interposition of a court of equity for its execution. 2 Story's Equity 325, section 1065; and the bill is properly brought for that purpose. *Downer* v. *Downer,* 9 Vt. 231.

The discretion with which the defendant is invested by the will, must be exercised in a reasonable and equitable manner. If he had refused to appropriate any portion of the trust fund, can there be a doubt but that this court could have compelled him to do so?

*Converse & Barrett,* for the defendant.

Town of Sharon *v.* Simons.

The trustee was made the almoner of the testatrix's bounty, and sole judge of what was "right and reasonable." No other tribunal had any voice in the matter. 5 Paige, 320, 323, 487.

This is not such a trust as chancery can enforce ; the sum to be paid is uncertain. It must vary with the circumstances of the beneficiary. 2 Story's Equity 243, section 972 *a.*, 979 *b.*, and cases there referred to. *Id.* 331, sec. 1071, 1072 ; *id.* 332, 1073.

The opinion of the court was delivered by

BENNETT, J. It seems in this case, that one Azuba Simons, who was an insane pauper, and chargeable to the town of Sharon, where she had a legal settlement, became in equity, the devisee, under her mother's will. By the terms of the will, her mother bequeathed to her son Joel all her estate, real and personal, which comparatively was a small amount, to be held by him *in trust*, and to apply such sum, as *he should judge right and equitable*, yearly, for her support, provided the town of Sharon would pay a reasonable sum yearly, so that the insane daughter could live with her friends. The will provides for the discharge of the trust, in this way, so long as the daughter shall continue insane ; and in case she became sane and well, she was at once to be paid whatever should then remain of her mother's estate, and in case of the death of the insane daughter, whatever remained in the hands of the trustee was to be divided equally among the heirs of the mother.

The object of this bill is to obtain a decree against the trustee to pay to the town the annual interest of the trust fund, and such part of the principal as the chancellor shall deem meet, to be applied to the support of the insane girl, or to such person as the chancellor shall see fit.

The first question to be disposed of is this : Have the town any such interest under the will as to enable them to maintain this bill ? It is made a statutory duty upon every town to support their own poor, and if the pauper has kindred within a certain degree of consanguinity, living within this state, of sufficient ability to support such pauper, the town, by a proceeding for that purpose, may cause them to be assessed by the county court in such sum as the court shall judge reasonable for or towards the support of the pauper.

The town of Sharon had no specific lien upon the property of the testatrix in her life time, nor upon her decease, under her will. The most that can be said is, that *while* Azuba Simons remained a pauper, chargeable to the town, they had an incidental interest or benefit in the performance of the trust under the will. But the legal title to the property, by the will, was given to Joel Simons in trust, and for the benefit of Azuba Simons, upon certain conditions.

She is the *cestui que trust*, under the will, and not the town of Sharon, and she, by her guardian, would have been the proper person to call the trustee to an account. The provision made for this pauper, under the will of her mother, was a gratuity and such as the town had no right to claim, and it creates no *privity* between the town and the *cestui que trust* under the will, and much less is there any *privity between the town and the trustee*. He can not be regarded as the trustee of the town, and if not, it is difficult to see how the town can, in their own name, come into a court of equity to call him to an account. It is well settled, that a creditor " filing a bill against an executor " can not make a debtor of the estate a party, nor can a legatee institute a suit against the debtors to the testator's estate, to compel them to pay their debts to him in satisfaction of his legacy. Yet in such a case the legatee, as well as the creditor, has an interest in the estate of the testator, and a right to have it applied to answer his demand, yet it must be done in a due administration on the estate, and the reason for this is, that the executor's or administrator's power over the estate is *exclusive*.

But in the case before us, the town have no equitable right to the fund. The trust is created by the will of the mother, for the benefit of the daughter, and if this fund created a means of support for the daughter, that might be a good reason why she should not be chargeable to the town.

If it is only sufficient to furnish a support in part, that may be a good reason why the town should only make up the balance necessary for her support. The case is the same in principle, as if the pauper was not insane. If the trustee did not faithfully perform the trust, a guardian might be necessary in the present case to compel it to be done.

But the trust is limited by the will. The trustee is directed to apply *such sum as he shall judge right and equitable,* yearly, for her support, provided the town shall pay a reasonable sum yearly, so that the insane person can live with her friends.

It is evident, that the will in this case gives to the trustee a discretion as to the sum to be applied to the support of the girl. He is to judge what sum will be *right and equitable for him to pay.* He has in this case exercised his judgment, and there can be no pretence, from the evidence, but what he has acted honestly and according to his best judgment, and without any sinister motive.

In such a case it will not do for a court of equity to assume the ground that they will examine into the accuracy of the conclusion come to by the trustee in the exercise of a sound discretion given him. This would be to change the character of the trust very materially.

If then, the town had made out an *equitable lien* upon this fund, which they have not done, their right, as to the sum to be applied, must depend upon the *sound discretion* of the trustee, and there is no sufficient ground shown in the case why this court should override the exercise of that discretion. I apprehend, for one, that the pauper has such an interest in this controversy as to have been entitled to be made a party to the bill; but this is of no importance, as the bill is to be dismissed for want of equity.

The decree of the chancellor, dismissing the bill, should be affirmed, with costs, and the case is remanded to the chancellor with directions to enter a decree accordingly.