J. C. BACON v. D. M. BACON AND CHARLES COBB, EXECUTOR OF JOHN BACON, 2D.

[IN CHANCERY.]

*Will Revoked.   Codicil.   The word "Legacy" may apply to Real Estate.   Trust.   Pleading.*

The testator wi'led both realty and personalty to each of his two sons. Afterwards, being dissatisfied with the conduct of one of them, he used the following words in a codicil to the will: "I do hereby revoke the said legacies by my said will given to my said son, Jerome C. Bacon, and I do give to my son, Delos M. Bacon, all of said legacies *in trust*, as fo'lows: that the same be kept by the said Delos M. until in the judgment of the said Delos M. the said Jerome C. shall prove himself worthy of receiving the same, and then and not till then to deliver the same to the said Jerome C. Bacon. It is further my will that if my said son. Delos M., shall not at any time judge it best to deliver said property to my said son, Jerome C., that the same shall be and remain the property of my said son, Delos M., and his heirs forever." A bill having been brought by the beneficiary to compel a surrender of the trust estate, *held*,

1. It is an *express trust* for the benefit of the orator, on condition that he proves himself worthy to have it executed in his favor, of which worthiness the trustee is made the judge.

2. But he is not the sole arbiter. His motives may be inquired into. The trustee cannot exercise his discretion and judgment from fraudulent, selfish, or other improper motives; nor can he refuse to exercise them from such motives; but he must act *bona fide*, with a simple view to carry out the intention of the testator; and the court will control his judgment and discretion to the extent of compelling an honest exercise thereof.

3. The word "*legacy*" may be applied to real estate; and, the testator having revoked "the said legacies," revoked the entire will by which realty was bequeathed to the orator.

4. The bill is bad on demurrer; because, there is no allegation that the debts of the estate had been paid; or, that the trust estate was in the possession of the trustee, and it appearing that the testator's estate was unsettled in the Probate Court.

BILL in chancery. Heard on demurrer, June Term, 1882, Caledonia County. Ross, Chancellor, dismissed the bill. The bill, among other things, alleged:

" The orator further says that between the making of said will and said codicil he (the orator) had been guilty of conduct which had not been pleasing to his father (the testator) ; and that in

making said codicil the testator did not intend to cut off said legacies given in the will to the orator, but merely to have the same held in trust till the conduct of the orator was worthy. The orator says that before his father's death and ever since he has conducted himself as became a dutiful son and respectable citizen, and has in every way endeavored to atone for the conduct aforesaid which had so displeased his father (the testator), and that since his father's death he has endeavored to conduct himself so as to merit the approval of the said Delos M., the trustee. And the orator says he believes that he has merited, by his conduct, the approbation of respectable citizens and neighbors ever since his father's death, and that under and by virtue of the provisions of said will and codicil of said testator he has become entitled to have his share of said estate delivered up to him, the orator, by said Delos M. Bacon, trustee; that in any event he is entitled to his share of said land thus given him in the original will; but the said Delos M. has taken the rents and profits of said land and claims that said land belongs to said estate and that none of it belongs to the orator. Your orator further says that he has repeatedly applied to said Delos M. and has asked him to deliver to him, the orator, his share of said estate; and has asked the said Delos in what respect he had proved himself unworthy to receive the delivery of said legacies; but the said Delos declines to state in what respect the orator has proved himself unworthy; nor does the said Delos state or claim that the orator has in any respect proved himself unworthy of receiving said legacies, but declares that he, the said Delos M., is the sole judge of that matter and that if the orator gets any part of the same it will be by legal proceedings."

Part of the will:

" I give, devise and dispose of all my estate, real and personal, save what may be necessary for the payment of my just debts and funeral charges, in the following manner: . . . I also give to my said wife one half the remainder of my estate, real and personal, to be and remain her property during her natural life. And it is further my will that all of said property at the decease of my said wife, shall be and remain the property of my two sons, Jerome C. Bacon and Delos M. Bacon, and their heirs, and if either of my said sons shall leave no issue, then it is my will that the wife of said son shall receive the proportion belonging to said son, meaning hereby that such wife shall hold the same during her life and at her decease the same shall revert to the issue of such son as shall leave issue. . . . I also give said Jerome

my violin, and my half of the land we own in company. . . .
I give the remainder of my estate to my said sons, Jerome C. and
Delos M., to be by them divided equally."

The other facts are stated in the opinion.

*Bates & May*, for the orator.

The will and codicil are to be interpreted as one instrument.
1 Redf. Wills, 288. Words in the will are to have the same con-
struction throughout the instrument. *Elliot* v. *Carter*, 12 Pick. 436.

The codicil revoked the *legacies*, but not the devises. *Malcom*
v. *Same;* 3 Cush. 472 ; *Hall* v. *Chaffee*, 14 N. H. 218 ; *Cooper*
v. *Pogue*, 92 Penn. St. 254 ; s. c. 37 Am. Rep. 681 ; *Osgood* v.
*Lovering*, 33 Me. 464 ; *Putnam* v. *Society*, 37 Vt. 271 ; *Decrow*
v. *Moody*, 73 Me. 100. This codicil created an express and pos-
itive trust, and under it Delos is bound to keep the legacies a rea-
sonable time—if not during the orator's life—until Jerome can
prove himself worthy ; and he is bound also to exercise a fair,
honest judgment as to the orator's conduct, and to deliver the lega-
cies when the orator is worthy. *Bohn* v. *Barrett*, 11 Rep. 839 ;
*Hamilton* v. *Downs*, 33 Conn. 211 ; McKenzie's Appeal, 41 Conn.
607 ; s. c. 19 Am. Rep. 525 ; *Dunning* v. *VanDeusen*, 47 Ind. 423 ;
*Williams* v. *Worthington*, 47 Md. 572 ; s. c. 33 Am. Rep. 286 ; 1
Perry Trusts, c. 4 ; 31 Am. Rep. 612 ; 68 Me. 34 ; 4 Gray, 236.
A court of equity in such a case as this will interfere to compel
an honest execution of the trust. The authorities are abundant
that the court of equity will interfere with the discretion reposed
in the trustee by the testator in case that discretion is unfair, dis-
honest or corrupt. *Woods* v. *Woods*, 1 My. & C. 401 ; *Consta-
bodie* v. *Constabodie*, 6 Hare, 410 ; 2 Lead. Cas. Eq. 1856 ;
Perry Trusts, ss. 511–519, 520 ; *Eaton* v. *Smith*, 2 Beav. 236 ;
*Brown* v. *Higgs*, 4 Ves. 708 ; *Marker* v. *Marker*, 9 Hare, 1 ;
*Clark* v. *Parker*, 19 Ves. 1 ; 1 Perry Trusts, s. 117, n. 1 ; 2 Ib.
s. 509, *et seq. ;* 2 Redf. Wills, 415, 420, 429.

*Belden & Ide* and *Cahoon & Hoffman*, for defendants.

· The will and codicil make Delos M. Bacon the *sole judge* of
the time he considers Jerome C. Bacon worthy of receiving the

legacy.   1 Lead. Cas. Eq. pp. 15, 16 ;  *West v. Holmesdale*, 4 L. R.
H. L. 543 ;  *Magrath* v. *Morehead*, 12 L. R. Eq. 491 ;  *Hays* v.
*Davenport*, 25 Vt. 109 ;  *Haddelsey* v. *Adams*, 22 Beav. 276.
The testator did not intend to create any special  or express trust
that could be enforced at the hands of the *cestui que trust* through
the aid of a  court or by any other instrumentality, but to place
the property in  the defendant's hands, to give  some of  it to the
orator, if the defendant thought best ;  but to appropriate it all to
his own use if he thought best, ·making him, by the terms of the
will, the sole tribunal to determine the propriety of bestowing any
part of the property upon  the orator.   Story Eq. s.  1070 ;  *Van
Amee* v. *Jackson*, 35 Vt. 177 ;  *Lyman* v. *Parsons*, 26 Conn. 517.
The will, thus construed according to the intent of the testator,
bestows upon  the defendant a  power in distinction from a trust.
1 Perry Trusts, p. 321, s. 3.    Trusts are always imperative, and
are obligatory upon  the conscience of the party entrusted.   The
court supplies the  defective execution of powers ;  but  never the
non execution of them, for they are meant to be optional.   *Ferre*
v. *Am. Board*, 53 Vt. 170 ;  *Greenough* v.  *Welles*, 10 Cush. 576 ;
*Gibbs* v. *Marsh*, 2 Met. 251.   The title of the defendant being
that of a donee of a power, no court has  authority to compel him
to exercise it in  favor of the orator.   Story Eq. s. 169 ;  Perry
Trusts, ss. 254, 511 ;  *Gibbs* v. *Shepard*, 125 Mass. 543 ;  *Bull* v.
*Veasey*, 1 Ves. Jr. 271 ;  *Leavitt* v.·*Bierne*, 21. Conn. 1 ;  *Roy* v.
*Master*, 6 Sim. 568 ; 1 Jarman  Wills (5th ed.),  pp. 388, 403.
The demurrer should stand, because the estate was unsettled.
*Adams* v. *Adams*, 22 Vt. 50 ;  *Boyden* v.  *Ward*, 38 Vt. 628 ; Rob.
Dig. p. 131, ss. 47, 49 ;  *Probate Court* v. *Kimball*, 42 Vt. 323.

The opinion of the court was delivered by

Rowell, J.   The bill alleges that the estate of the  testator is
still unsettled in the  Probate Court.   It contains no allegation
that said estate, or any  part thereof, has ever  come into the pos-
session and control of the said Delos in  such a  manner that he
could, if he would,  pass the same over  to the orator as prayed.
For aught that the bill discloses, all the estate may be needed for
the payment of debts and administration expenses.   It is obvious

that Delos cannot be called upon to act in the premises until the property has so come to him that it is subject to his control in fulfillment of whatever duty the will imposes upon him in this behalf; and it cannot thus come to him so long as it is properly and legally in the possession and control of the executors in due course of administration. This view alone disposes of the case. But as the main object of the bill is to obtain a construction of the will, and to determine the orator's rights thereunder as against his brother, and as these questions have been fully argued at the Bar, we deem it best to indicate our judgment concerning them.

Whether the codicil of July 14, 1875, revoked the *devises* in the will to the orator, might properly arise in the Probate Court on final decree of distribution; but there may be some doubt whether that court could take cognizance of the other question.

By his will, executed on March 9, 1872, the testator gave to the orator, his son, certain of his estate, including real and personal property. After the making of said will, the orator, by some misconduct, displeased the testator, who thereupon, on July 14, 1875, made the following codicil to his said will:

"Whereas, I, John Bacon, 2d, have, by my last will and testament in writing, duly executed, bearing date March 9, 1872, given and bequeathed to my son, Jerome C. Bacon, certain property therein enumerated; now, I, the said John Bacon, 2d, being desirous of altering my said will in respect to the said legacies, do therefore make this my present writing, which I will and direct to be annexed as a codicil to my said will, and taken as a part thereof. And I do hereby revoke the said legacies by my said will given to my said son, Jerome C. Bacon, and I do give to my son, Delos M. Bacon, all of said legacies *in trust* and as follows: That the same be kept by the said Delos M. until, in the judgment of the said Delos M., the said Jerome C. shall prove himself worthy of receiving the same; and then, and not till then, to deliver the same to the said Jerome C. Bacon.

"It is further my will that if my said son, Delos M., shall not at any time judge it best to deliver said property to my said son, Jerome C., that the same shall be and remain the property of my said son, Delos M., and his heirs forever."

It is conceded that this codicil revoked the gifts of personalty to the orator in the will, but contended that it did not revoke the

gift of realty. It is said that the term "*legacies*," as used in the codicil, does not in legal signification nor in the intention of the testator include the *devises* to the orator in the will. We are mindful of the rule that when a will contains a clear and unambiguous disposition of property, real or personal, the gift is not allowed to be revoked by doubtful expressions in a codicil. 1 Jarman, 181. Also, that the will and the codicil are to be taken together, and construed as one instrument. 1 Redf. Wills, 288. But the real question is, after all, What was the intention of the testator ? The word *devise* is used twice in the will ; once in the general dispositional clause, probably adopted from the form so long in use in this State, and once, and technically, in the last part of the will, in referring to " land above *devised* to my son, Jerome C." The word *give* is used in the will in all instances in making specific disposition of property, whether real or personal. The word *bequeath* is not used at all. In the codicil the testator recites that by his will he has " *given* and bequeathed" to the orator " *certain property therein enumerated*." This wording is broad and comprehensive enough to include all the property mentioned in the will and thereby given to the orator ; and the words, " said legacies," as used in the codicil, we construe to be equally broad and comprehensive. Although the term *legacy* is properly applied to personal property only, yet sometimes, by force of the context, it has been held to apply to realty as well ; as, in *Hope d. Brown* v. *Taylor*, 1 Burr. 268, and *Hardacre* v. *Nash*, 5 T. R. 716. In *Hughes* v. *Pritchard*, 6 Ch. D. 24, the words, " residuary legatees," were held to designate the persons to take realty not specifically devised. The motive that induced the testator to change his will at all as to the orator, would seem to be sufficient to induce a radical and complete change. In the judgment of the testator, the orator had so misconducted as to render himself unworthy of his bounty ; and it seems to have been his purpose to put him on probation, as the most effective if not the only means of winning him to a better life, and his judgment that this could be the more certainly accomplished by making reformation a condition precedent to his right to share at all in the inheritance.

But the most important question still remains. Can a court of equity control the said Delos to any and what extent in respect to the property given him by said codicil ? This depends upon whether a trust is thereby created or only a mere power conferred. If the former, it is clear that he can be controlled to a certain extent; but if the latter, it is equally clear that no remedy exists for the non-execution thereof. Trusts are always imperative, and obligatory on the conscience of the party entrusted ; while mere powers are never imperative, but leave the acts to be done or not to be done at the will of the party to whom they are given. Perry Trusts, s. 248 *et seq.* In most of the cases in which this question has been discussed, the words of the will were precatory, and, in the language of the Vice-Chancellor in *Williams* v. *Williams*, 1 Sim. n. s. 358, " the real question in these cases always is, whether the wish, or desire, or recommendation that is expressed by the testator, is meant to govern the conduct of the party to whom it is addressed, or whether it is merely an indication of that which he thinks would be a reasonable exercise of the discretion of the party, leaving it, however, to the party to exercise his own discretion." And, as said by Lord ELDON in *Morice* v. *The Bishop of Durham*, 10 Ves. 522, 535, "if the party is to take himself, it must be on this ground, according to the authorities, that the testator did not mean to create a trust, but intended a gift to that person for his own use and benefit; for if he was intended to have it entirely in his own power and discretion whether to make the application or not, it is absolutely given ; and it is the effect of his own will, and not the obligation imposed by the testament. But if he cannot, or was not intended to, be compelled, the question is not then upon a trust that has failed, nor the intent to create a trust, but the will must be read as if no such intention was expressed or to be discovered in it." And after referring to *Pierson* v. *Garnett*, 2 Bro. C. C. 38, where, *prima facie*, an absolute interest was given, and the question was whether precatory, not mandatory, words imposed a trust, and other like cases, the Lord Chancellor goes on to say : " But the principle of those cases has never been held in this court applicable to a case where the testator himself has

expressly said he gives his property upon trust." Now the question here is, Has the testator exercised will? Can volition be read out of the whole instrument in the light of the circumstances alleged in the bill? He gives to the said Delos " all of said legacies *in trust* and as follows." Here is a giving upon express ·trust in apt words. Thus far no doubt can arise. But the testator goes on to declare the trust, and here is where the question comes. But the words of his declaration are not precatory; they are mandatory, commanding that in a certain event named the property shall be given to the orator as the beneficiary. The words in the latter part of the codicil, that if the said Delos " shall not at any time *judge it best* to deliver said property" to the orator, must be construed with the rest of the codicil, and mean no more than the former words that direct the property to be given to the orator whenever in the judgment of the said Delos he shall prove himself worthy to receive the same.

But it is said that here is a 'limitation over in case the power is not executed, and that " when there is an express limitation of the property over in case the power is not executed, no trust can be implied." Perry Trusts, s. 253. Judging from the cases referred to in support of the text, the author is here speaking of powers of appointment. *Lines* v. *Darden*, 5 Fla. 51, is such. But there the court held, not that there was no trust because there was a limitation over, but that only a mere power was given. In *Pritchard* v. *Quinchant*, 1 Amb. 147—the last judgment in which is more fully stated in a note to *Barstow* v. *Kilvington*, 5 Ves. 596—there was a voluntary deed of settlement to trustees after marriage, to such uses as the husband and wife should jointly appoint, and in default of such appointment, to them for life, and after the decease of the survivor, to the use of all or any of the child or children of them, in such shares and proportions, and of such estate or estates, term or terms, and in such manner and form as the husband should by deed or will appoint, " *and in default thereof*," to the husband and his heirs and assigns forever. The question was, on the settlement as originally drawn, whether the words, " *and in default thereof*," meant in default of appointment by the husband or in default of children by the marriage; and as

matter of construction they were held to mean the former, and that no estate vested without appointment. But the settlement was reformed in favor of the son against a devisee of the husband, according to the letter of instructions for drawing the settlement, and the estates ordered to be settled, subject to incumbrances, to the use of the son and the heirs of his body with remainder over. *Barstow* v. *Kilvington* is very parallel to *Pritchard* v. *Quinchant* on the question of reformation, the only question decided in it, though it was said in argument that the settlement had been construed by a court of law. In *Madoc* v. *Jackson*, 2 Bro. C. C. 588, Lord THURLOW thought that a power of appointment could not be held to suspend the vesting of an interest given in default of appointment. But it is said in 4 Ves. 792, that it had more than once been observed at the Bar that this case turned on a point wholly collateral, though there was some discussion upon that which is the subject of the report. But in *Campbell* v. *Sandys*, 1 Sch. & Lef. 281, Lord REDESDALE seems to recognize such a doctrine, though he did not there apply it, but referred to cases as holding the same view that Lord THURLOW did. But however that may be, this is not a case of limitation over in default of appointment. It is a case of express trust for the benefit of the orator on condition that he proves himself worthy to have it executed in his favor, of which worthiness Delos is made the judge ; and whenever that condition is fulfilled, the orator will become entitled. But it is said that Delos is the sole arbiter, and that his judgment in the premises is final, and cannot be reviewed nor his motives inquired into. It is true, as said in *Clark* v. *Parker*, 19 Ves. 11, that where a parent gives property to a child with an express condition for the consent of another, the jurisdiction that a Court of Chancery assumes upon that subject, subdivided thus, whether consent has been given or whether it has been reasonably withheld, is very dangerous to the peace of families and the rights of parents. If the court is to inquire whether the person to whom the discretion is given, meaning to act honestly, has made precisely the same decision that the court would have made, it amounts to reading the will as requiring the consent of the court, and it is obvious that many considerations might operate against

individual consent into which the court could not providently inquire, and which it would be quite competent to the party to refuse to disclose.    But there are cases of a different kind where no good reason for withholding consent can be suggested ; and others still stronger where you can discover a bad and vicious reason. A trustee cannot exercise his discretion and judgment from fraudulent, selfish, or other improper motives ; nor can he refuse to exercise them from such motives.    Perry Trusts, s. 511.    And if he acts, or refuses to act, upon such grounds, the court will interfere and give a remedy to the party injured by the fraudulent act or refusal to act.    *Bashwood* v. *Bulkeley,* 10 Ves. 230 ; *Peyton* v. *Bury,* 2 P. Wms. 626 ; *Bax* v. *Whitbread,* 16 Ves. 15.    A person having a power must exercise it *bona fide* for the end designed. *Aleyn* v. *Belchier,* 1 Eden, 132, (1 Lead. Cas. Eq. 420).    In the exercise of powers, trustees should act with purity of motives, and with a single view to carry out the exact purpose of the power and the intention of the testator.    Perry Trusts, s. 511 *a*.    But the court will not deprive a trustee of the honest exercise of the discretion that the testator has vested in him.    *Sharon* v. *Simons,* 30 Vt. 458 ; *Mason* v. *Jones,* 3 Edw. Ch. 524 ; *Ireland* v. *Ireland,* 84 N. Y. 321.

In this case the court will control the judgment and discretion of the said Delos to the extent, and only to the extent, of compelling an honest and *bona fide* exercise thereof for the end designed by the testator.

We find no error in the decree ; but the same is reversed *pro forma,* and the cause remanded, with directions that the same stand over, with liberty to the orator to amend his bill as he may be advised in respect to said property having become subject to the control and disposition of the said Delos as trustee as aforesaid, and that, in default of such amendment, the bill be dismissed with costs.