## TOWN OF WALDEN v. TOWN OF CABOT.

*Paupers. The Removal of Paupers, &c.*

It is not necessary for the pauper to make application in person, to the overseer for relief ; but if there is a necessity for relief, and it is granted in good faith, it comes within the provisions of the statute, and may be granted upon the application of any one.

A person in actual possession of a trust estate, and living on the same, with his family, is not subject to removal, as a pauper, under the statute, for the rule is the same, whether the estate is a *legal* or *equitable freehold*.

APPEAL from an order of removal, made on the 24th day of April, 1850, by two justices of the peace, ordering one Paul Willey and Hannah Willey, his wife, to remove from the town of Walden to the town of Cabot.

Plea, *first*, that the said paupers were unduly removed; *secondly*, that they were not chargeable to the town of Walden, at the date of said order. Trial by jury.

On trial, the plaintiffs offered evidence, tending to prove that the paupers, prior to, and on the first day of April, 1841, had their legal settlement in the town of Cabot; that on the first day of April, 1841, the said Willey, with his said wife and family, removed from the town of Cabot to the town of Walden, and continued to reside in Walden, up to the time of the making of the said order of removal; that about the time of their removal into Walden, the said Paul Willey and Hannah Willey, his daughter, then unmarried, bargained for fifty acres of land, at two dollars per acre, and a deed of the same was taken to the said Hannah, under an agreement that Paul Willey should, in the end, have a deed of so much of the land as he should pay for. That at the time of said purchase, said Hannah paid fifty dollars, and said Paul about seventeen dollars, and that subsequently he paid about twenty dollars more, and said Hannah paid the balance.

That said Paul Willey, with his family, resided on said land, down to the time of the making of the said order of removal; that in the fall of 1844, the said Hannah, daughter of the said Paul, was married to one John Sawyer, and at the time, had signed a note for $20, as surety for her father, upon which note, subsequently, the said Sawyer paid about $12, and said Paul became indebted to

him otherwise for the sum of about $6, and the said Sawyer claimed to hold the said land, and refused to give any deed until these sums were paid.

The plaintiff also offered evidence, tending to prove that the said Paul Willey, at the time of trial, was about eighty-four years old, and his wife about sixty-six years old, and that for several years the said Paul had been infirm and very deaf, and his wife for some years had the principal care and management of the business and affairs of the family; that about the middle of March, 1848, the said Paul was sick, and the said family were in destitute circumstances, and poor, and entirely out of provisions, and had no hay for their cow; that his wife applied to the overseer of the poor of Walden for assistance; and said overseer furnished them with provisions, and hay for their cow, to the amount of about six dollars.

It did not appear that said Paul had any knowledge, at the time, of the application by his wife, to the overseer for assistance, or of the aid furnished by him, and that upon being informed of the same, afterwards, he expressed his dissatisfaction that it had been done. That in the early part of March, 1850, the said Paul was again sick, and the family destitute of provisions for themselves, and hay for their cow, and had no means to procure the same; and that his wife, Mrs. Willey, again applied to the overseer of Walden for aid, which was furnished by him, and that they continued to be supported by the town, from that time, up to the time of making said order of removal.

The defendants requested the court to charge the jury, that upon the evidence, if believed, the said Paul Willey had such a *freehold estate* in said land, that he was not subject to said order of removal; and also, that if the application of Mrs. Willey to the overseer, for assistance, in 1848, was without the knowledge or consent of the said Paul, the support furnished at that time, by the town, would not have the effect to prevent said paupers from gaining a settlement in Walden.

The court declined so to charge the jury, but did charge that said evidence, if believed, did not show said Paul to have such an estate in said land, as would prevent the town of Walden from removing him therefrom, if chargeable,—that the interest of said Paul, in said land was to be considered by the jury like any other property owned by the pauper, in reference to its being made available, as a

means of procuring for themselves the supplies required for their subsistence,—that if it could be made available for that purpose, it was the duty of the pauper to do so, before applying to the overseer for assistance, and the duty of the overseer to require it to be done, before furnishing assistance, at the expense of the town. That if, in March, 1848, the said Willey and his wife were in such destitute and needy circumstances, as to justify the overseer in rendering the aid which he did, and had no means of their own, by which they could furnish themselves with such necessaries as their condition reasonably required, then such aid would have the effect · to prevent the paupers gaining a settlement in Walden, and that the fact, that such application and aid was not known to the said Paul, and that he was dissatisfied therewith, would not prevent such a result.

To this charge, and the refusal to charge as requested, the defendants excepted.

The jury returned a verdict for the plaintiff.

*Geo. W. Stone,* and *J. McLean,* and *Peck & Colby* for defendants.
The pauper had a freehold interest and was irremovable.

It is a principle affirmed by *Magna Charta,* and part of the common law, that no freeman 'can be removed from his own house, as a pauper.

The *amount* of land is immaterial, nor is the value of any consequence. The title need not be in the pauper, in form, if it is so placed that the title may come to the pauper at his option, that is a freehold. *Londonderry* v. *Acton,* 3 Vt. 122.

*Rex* v. *Aythrop, Rooding, Burrows,* Settled Cases, 412.

This exemption extends to a tenant in dower, in this State. In Massachusetts, under a statute giving a settlement, by having an estate of freehold, of the yearly value of ten dollars, it was held that it might be acquired by the *cestui que trust* of a trust estate. *Orleans* v. *Chatham,* 2 Pick. 29. *Mansfield* v. *Pembroke,* 5 Pick. 449.

*Davis & Dana* for plaintiffs.

1. The interest of the pauper in the land, was not a freehold estate. When he moved into Walden, in 1841, his daughter, Hannah, purchased fifty acres of land, at two dollars per acre, and he

was to have his proportion as he paid for it. He paid $37, the deed being to Hannah, who paid the residue. She married one Sawyer, but previous to the marriage, she had become surety for her father for $20; of this sum, Sawyer paid $12, and held a claim against the pauper for $6; and for these sums, amounting to $18, he held on to the land. From this statement, it appears that the pauper had a nominal interest of $19 in the land; but whether it was worth less or more, at the time of the order, does not appear. Hence, the most that can be said of this interest is, that it was an equitable one of $19.

If this constituted a *technical freehold*, however inadequate as a means of support, it would be a technical bar to the pauper's removability. *Londonderry* v. *Acton*, 3 Vt. 122.

It appears from this leading case on the subject, that this principle is derived from *Magna Charta* itself, which recognizes a person's right to remain on his own freehold.

In *Brookfield* v. *Hartland*, 6 Vt. 401, it is decided that a tenant in dower cannot be removed as a pauper, from lands occupied as tenant in dower.

But it is believed, that a mere equitable interest in land has never been decided to be a technical bar to a removal; and with whatever interest of this kind the pauper may be invested, is a proper question for the jury, under instructions from the court.

In *Hartford* v. *Hartland*, 19 Vt. 392, it was decided, that a pauper, the owner of an undivided share in the reversion of her mother's dower, who had become chargeable, was subject to removal, although in that case, the interest or a part of it had been attached.

2. It is objected, in this case, that the application was in fact made by the wife of Paul Willey, and that he expressed dissatisfaction when informed of it. The Comp. Statutes, 130, § 3, make it the duty of overseers, "to provide for the immediate comfort and "relief of all persons residing in their respective towns, when they "fall into distress and stand in need of immediate relief;" and no direction is given that they shall wait until any particular application is made, by any particular person.

The overseer is to exercise his discretion, and it might be his duty to furnish relief, when the recipient, through pride, or false delicacy, might be very unwilling to receive it; and that a wife, who had been in the habit of transacting the business for the family,

for a number of years, as the case shows, could not make a legal application to the overseer, to save herself, and her poor old deaf husband from starvation, is simply an absurdity.

The opinion of the court was delivered by

BENNETT, J. The inquiry, in this case, involves the place of settlement of Paul Willey and his wife. Was it in Walden, or Cabot, at the time of the removal? Prior to the first day of April, 1841, they had their settlement in Cabot, and on that day, they removed from that town to Walden.

It is claimed, that they subsequently gained a settlement in Walden, by a residence of seven years. But it appears, that in March, 1848, and before the seven years had expired, Willey's family was in need of relief, and that upon application of Mrs. Willey, and unknown to her husband, the town furnished them some relief; and when Willey learned the fact, he expressed his dissatisfaction. There is no pretence but what the family needed relief, and it is not claimed that the relief furnished was *colorable;* but it is said, that the relief could only be furnished upon the personal application of Willey, or by his authority. It is made the duty of the overseer of the poor, to provide for the *immediate* relief of all persons residing, or found in the town, when they fall into distress, and stand in need of relief. The statute does not require that they should wait until the pauper himself shall have made application for help, and we see no reason why the law should be so.

If there is a necessity for relief, and it is granted in good faith, that should be enough. The pauper may have become a *maniac,* and incapable of making application, or assenting to it when made.

The important question, on this bill of exceptions, is, whether Willey had such a *freehold* interest in lands in Walden, as to prevent his removal to Cabot. About the time he removed to Walden, he and his unmarried daughter bargained for fifty acres of land, at two dollars per acre. The daughter was to take the deed of the lot, under an agreement that Willey in the end should have a deed from her, of so much of the lot as he should pay for. The deed was given to the daughter, and she at the time paid fifty dollars towards the purchase, and Willey paid seventeen dollars. Subsequently, he paid twenty dollars more, and she the rest; and the case shows, that *Willey and his family resided upon this lot from*

Walden *v.* Cabot.

that time, up to the time, and when he was removed. · In *Londonderry* v. *Acton,* 3 Vt. 122, it was held, that a man could not be removed from one town to another, while he was owning and occupying a *freehold estate.* This case received the mature consideration of the court. Such is the English law ; and it is immaterial what was the value of the freehold. In the case of the *King* v. *Inhabitants of Martly,* 5 East. 40, the pauper had applied for relief, and the value of the freehold was not sufficient to give him a settlement. Massachusetts has pursued the same course of decisions. The legal title to the fifty acres passed by the deed to the daughter; but she held the title to a portion of the lot, in *trust for her father.* There was what the law calls a *resulting trust,* so far as Willey paid the consideration, when the deed was executed. The fact, that the daughter subsequently signed as surety for her father, and the husband of the daughter paid a part of the note, and also made a small advance to the father, can have no effect. Willey had never agreed that either the daughter or her husband should have a *lien* on his *equitable estate,* as a security.

The statute of 1793, in Massachusetts, provided for gaining a settlement, "by a person's owning an estate of *freehold* in the town, " &c., of the clear yearly income of three pounds, and taking the "rents and profits thereof, three years successively.;" and in the case of *Orleans* v. *Chatham,* 3 Pick. 29, it was held, that an estate of a *cestui que trust* was such an estate as the statute required. "The statute," it is said in that case, "does not say whether it shall "be the *legal estate, or not;* but only that it shall be an estate of "*freehold,* and the terms of the statute will include a trust estate " of *freehold,* as well as a legal one, upon the ground that the *genus* "includes the *species.*"

In the case at bar, the person removed was in the actual possession of the trust estate, living upon the same, with his family, at the time of the order of removal. The same reasons exist why there should not be a removal in the one case, as in the other; and we think the rule should be the same, whether the estate is a *legal* or an *equitable freehold.*

The judgment of the county court is reversed, and a new trial granted.