## MOSES KELLEY v. JAMES E. SEWARD.*

### Estoppel.  Intendment  in  Support  of  Judgment.

D. owned four meeting-house horse-sheds and A. one, all standing in a row and framed together.  D. hired H. to move them, agreeing to give him therefor all the sheds but two, and H. hired O. to assist him, agreeing to give him one shed therefor.  In selecting sheds, O. took A's shed, not knowing that it was A's, nor that A. claimed it, and afterwards sold it to defendant.  D. died, and A. swapped his shed with D's administrator for one of the two that D. reserved.  Afterwards all the sheds but the one for which A. swapped, were sold, and the one that A. originally owned was finally bought by the plaintiff.  None of the conveyances were in writing.  The parties on both sides occupied the shed, but in such a way that neither knew that the other claimed it, until plaintiff fastened it up, when defendant broke in, whereupon plaintiff brought trespass *qua. clau.*  *Held*, that although if the conveyances had been by deeds duly recorded the plaintiff might have been estopped to deny defendant's title, yet, as plaintiff was in possession at the time of the alleged trespass, and as it did not appear that he had ever had notice either actual or constructive of the claim of the defendant or of those under whom he claimed, the action would lie.

Question was made as to whether the shed was realty.  Judgment of the County Court was for plaintiff.  *Held*, that as every reasonable intendment was to be made in support of the judgment, and as the facts found were consistent with the idea that the shed was attached to the realty so as to be a part of it, it was to be considered that it was so attached. ·

TRESPASS *qua. clau.*  Plea, general issue, and trial by the court, September Term, 1876, WHEELER, J., presiding.

It appeared that in May, 1857, Daniel Kelley, who owned four meeting-house horse-sheds that were framed together and stood in a row, at Rutland Center, procured one Hulett to move them, together with another shed that stood next to them on the south end of the row, and belonged to his son Alonzo, to the grounds of the Methodist Church, at Rutland, agreeing to give him therefor the sum of $5 and his right to all of the sheds but two.  The defendant's evidence tended to show that he then assumed to own all of the sheds and to convey all but two of them to Hulett, who had no knowledge that Alonzo owned or claimed one of them.  It appeared that one Ormsbee helped Hulett about moving the sheds,

*Decided at the January Term, 1878.

and that Hulett was to let him have one of them; that after they were moved Daniel Kelley took the middle shed and the one next north of it for his two, that Hulett took the north one and the one next to the south one for his two, and that Ormsbee took the south one, which was Alonzo's, not knowing it to be Alonzo's, for his. In November, 1859, Daniel Kelley died, and one of his sons was appointed administrator of his estate, but his property was divided among his widow and children by agreement. In December, 1859, Alonzo swapped his shed with the administrator for the middle one. Immediately thereafter all the rights of the heirs to all the sheds but Alonzo's were sold to one Burnett, who on December 16, 1872, sold his right to Alonzo, who, in January 1873, sold the south shed to the plaintiff. In 1860, Ormsbee sold the south shed to one Coppins, who in about six months sold it to one Richardson, who in 1863 sold it to the defendant. None of those conveyances were in writing. From the time the sheds were moved, to the time Alonzo sold to the plaintiff, Ormsbee and those holding under him occupied the south shed to put horses under on Sundays, with ordinary regularity, and Alonzo and Burnett occupied it for the same purpose occasionally on week days and Sundays, but neither party so far interfered with occupation by the other that either knew that the other claimed it. But on January 27, 1873, after the plaintiff bought it, he put doors on it and locked it up. In May following and several times thereafter the defendant broke open the doors and put his horse into it, and finally broke down the doors. This action was brought for those acts. The defendant claimed that if Daniel Kelley in dealing with Hulett and Ormsbee assumed to own the south shed, and Alonzo thereafter exchanged his title to the shed in dispute with the administrator of Daniel Kelley, such administrator could thereafter convey no title to the plaintiff; but the court held otherwise; to which the defendant excepted.

*W. H. Smith*, for the defendant.

Trespass *qua. clau.* cannot be maintained. The shed, was personal property, and the right of access a mere easement. 1 Washb. Real Prop. 5, 6; *Aldrich v. Parsons*, 6 N. H. 555;

*Dame* v. *Dame,* 38 N. H. 429; *Rogers* v. *Woodbury,* 15 Pick. 156.

Alonzo Kelley adopted and ratified the acts of his father in assuming to convey the shed, and was thereafter estopped from afterwards assuming title.

When Daniel Kelley's administrator bought the shed, the title thereto vested by operation of law in Daniel Kelley's purchaser.

*Joel C. Baker,* for the plaintiff.

When a conveyance is without covenants, an after-acquired title will not inure to the benefit of the vendee. 2 Hilliard Real Prop. 116, 615; Sugden Vend. & Purch. 205, note; *Comstock* v. *Smith,* 13 Pick. 116; 4 Kent Com. 98; *Robertson* v. *Wilson,* 38 N. H. 48; *Smith* v. *Pollard,* 19 Vt. 272.

The opinion of the court was delivered by

ROYCE, J.   In 1857, when Daniel Kelley made the trade with Hulett to move the five sheds, he owned the four northern sheds, and Alonzo the south one, about which this controversy has arisen.   There was no written conveyance of any of the sheds. The plaintiff claims title to the shed in question by virtue of a purchase made from Alonzo.   The defendant's evidence tended to show that Daniel Kelley, at the time he made the trade with Hulett, assumed to own all the sheds and conveyed all of them but the two which he reserved, to Hulett for removing them, and that Hulett did not then know that Alonzo claimed to own one of them. Hulett let one Ormsbee have the south shed for helping him remove them, and in 1860, Ormsbee sold the shed to one Coppins, under whom the defendant claims title.   In November, 1859, Daniel Kelley died, and one of his sons was appointed administrator of his estate, but his property was divided among his children and his widow by agreement.   In December, 1859, Alonzo swapped the south shed (which was his) with the administrator for one of the sheds which Daniel Kelley owned under his trade with Hulett. Immediately after that all the right of the heirs to all the sheds except the one which was then owned by Alonzo was sold to one Burnett; and in 1872 Burnett sold his right to Alonzo, and in 1873 Alonzo sold the south shed to the plaintiff.

It is not claimed that either Hulett or Ormsbee acquired any title to the south shed under the trade that was made between Daniel Kelley and Hulett, but it is claimed that the title that the administrator of Daniel Kelley obtained to this shed by the exchange that he made with Alonzo inures to the benefit of the defendant, and makes a title in him which is superior to the title of the plaintiff. This claim is based upon the fact that in the conveyance by Daniel Kelley there was an implied warranty of title, and that all parties claiming under him are estopped from denying that he had a title at the time he made the conveyance. The different conveyances of the shed were by parol, but applying the same rule that would apply if the conveyances had been by deed, the question whether the deed would estop the grantor from setting up an after-acquired title would depend upon the quality of the deed. The general rule is that to estop the party from setting up such title there must be a covenant of general warranty, or what is equivalent to it, in the deed ; and that a warranty against all claiming under the grantor applies to those existing at the time, and not to those afterwards acquired. 3 Hilliard Real Prop. 615 ; Bigelow Estoppel, 334. And the reason for the rule in such case has sometimes been said to be to avoid circuity of action—that inasmuch as the grantor was liable on his covenants, to avoid the necessity of an action upon the covenants, courts would treat the covenants as an estoppel against setting up any such title. But it does not follow that the plaintiff is estopped by virtue of the parol conveyances that were made, even though he might have been estopped if the conveyances had been by deed, and the deeds properly recorded. The shed in question was originally the property of Alonzo, and the case does not show any actual or constructive notice to the plaintiff that the defendant, or those under whom he claims, ever claimed to own it. The plaintiff was in possession at the time the alleged trespass was committed, and the court did right in holding that if the facts which the defendant's evidence tended to show had been found, they would not constitute a defence.

It is now claimed, although the question does not appear to have been made in the County Court, that trespass on the freehold will

not lie. The argument in support of this claim is based upon the assumption that the shed is personal property. Every reasonable intendment is to be made in support of the judgment, and the facts found are consistent with the theory that the shed was so attached to the realty as to become a part of it. So that there is no error apparent in the record that should reverse the judgment, and it is affirmed.