TOWN OF MARSHFIELD *v.* TOWN OF CABOT.

May Term, 1935.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed October 1, 1935.

*Fred E. Gleason* for the defendant.

*J. Ward Carver* for the plaintiff.

SLACK, J. This is assumpsit under our pauper law to recover for money expended for the burial of Mrs. Oliver King. On facts found, plaintiff had judgment, and the case is here on defendant's exceptions.

The material findings are these: On April 30, 1930, King had a "legal pauper residence" in Cabot; that day he moved, with his family, to Marshfield where he resided continuously to the time Mrs. King died, in December, 1933. During that time neither he nor any member of his family requested aid or assistance from Marshfield. When his wife died King was a poor person in need of assistance, and called on Marshfield to defray her burial expenses, and it did. In May, 1932, King's girl, about eight years old, injured a finger while playing in the Marshfield schoolyard. Her teacher took her to Doctor Corson in Plainfield, who found that immediate amputation of the finger was necessary. Knowing King and his ability to pay, the doctor refused to operate and take care of the case until the overseer of the poor for Marshfield agreed to pay for his services; and one Potter, Marshfield's then overseer, upon being consulted by the doctor by telephone, agreed to do so. After the amputation, King and other members of his family took the girl to the doctor's in Plainfield several times for treatment of her finger. The overseer requested King to pay the doctor's bill and he refused, saying that he would not and could not. The overseer paid the same June 7, 1932, by a town order drawn by him. In May, 1932, King was poor and in destitute circumstances, but made no request on the overseer for assistance. It is also found that the day before the overseer drew the order to pay the doctor, the selectmen of Marshfield paid King $20 "in full payment for expense money paid out for Dorothy May King, injured in a swing and loss of her finger"; and that during the year 1932 the town paid King $107.25 for boarding one Nunn, a town charge.

The plaintiff did not attempt to collect the amount expended on account of the girl's injuries from defendant, and it is not included in the judgment in this case. The only significance of that incident was to show that King had not acquired a residence in Marshfield at the time of his wife's death, and, consequently, that Cabot was liable for Mrs. King's burial expenses.

The real issue, as defendant says in its brief, "is whether the three years residence of the King family under the pauper statutes, in plaintiff town was interrupted by the transaction growing out of the King girl's injury, and the payment by the plaintiff, on account thereof."

Section 3923 of the Public Laws, so far as material, provides: "If a person is poor and in need of assistance for himself or family, the overseer of the poor of a town shall relieve such person or his family, when application for such assistance is made. * * * And if he has not resided in such town for three years, supporting himself and family, and is not of sufficient ability, to provide such assistance, the town so furnishing the same may recover the expense thereof in an action of contract, on this statute, from the town where he last resided for the space of three years, supporting himself and family."

██ ██ Subject to defendant's exception, plaintiff was permitted to show by the doctor that he was paid for his services by a town order drawn by the overseer, and its date. It is claimed that this was incompetent as bearing on the pauper residence of King because the doctor's services were not authorized by King or any member of his family, nor had any member of that family applied to the overseer of Marshfield for assistance. This evidence was admissible if the doctor's services were rendered under such circumstances that Marshfield was liable therefor. We think they were. The girl required immediate attention; the doctor knew in a general way King's financial condition; so did the overseer; the doctor informed the overseer what had happened and what was necessary, and the overseer thereupon authorized his services. Nothing appears to indicate that the overseer did more, or other, than the law required of him in the circumstances. P. L. 3919 provides that: "A town shall relieve and support poor and indigent persons residing or found therein, when they are in need thereof," etc. P. L. 3920 provides that the overseer of the poor shall have the care of such persons "and shall see that they are suitably relieved, supported," etc. The overseer's duty to act was mandatory and ineludible when he received information, however, conveyed, that relief was required. *Town of Walden* v. *Town of Cabot*, 25 Vt. 522; *Town of Weston* v. *Town of Wallingford*, 52 Vt. 630; *Town of Waitsfield* v. *Town of Craftsbury*, 87 Vt. 406, 89 Atl. 466, Ann. Cas. 1916C, 387; *Town of Hardwick* v. *Town of Barnard*,

102 Vt. 330, 148 Atl. 408; *Peabody* v. *Town of Holland,* 107 Vt. 237, 178 Atl. 890. In the latter case, application for assistance for the poor person was made by a hospital located in plaintiff town. So the fact that neither King nor any member of his family applied for assistance does not avail defendant. This exception is without merit. This disposes of exceptions (a), (b), and (f). The record shows that the stub to the town order given the doctor was excluded, so exception (g) has no merit.

Subject to defendant's exception (h), plaintiff's overseer was permitted to testify that he consulted defendant's overseer regarding the girl's injury, but since he was not allowed to tell what either said this was harmless.

The remaining exceptions to the admission of evidence relate to evidence regarding King's financial status in May, 1932. Whether the overseer's determination that King's condition at that time made a proper case for relief was final and conclusive as to Marshfield (See *Holloway* v. *Town of Barton,* 53 Vt. 300, a transient pauper case), it was not as to Cabot. *Town of Ripton* v. *Town of Brandon,* 80 Vt. 234, 67 Atl. 541. As to the latter town, King's then need of assistance was an open question.

While it is said in *Town of Hardwick* v. *Town of Barnard,* following *Town of Ripton* v. *Town of Brandon,* that, when a town, *bona fide,* relieves a person apparently a pauper and actually standing in need of relief, the town in which such person has the statutory residence, if given the required notice, will be liable for the expense, although it may turn out that the person relieved had some property, in *Town of Cabot* v. *Town of St. Johnsbury,* 94 Vt. 311, 317, 111 Atl. 454, this was held to apply only when, in the circumstances, what property such person has is not available for his immediate relief, or is manifestly disproportionate to his needs.

Doctor Corson testified that he knew where the Kings lived, and had been in the house; that the place was on a back road, probably a mile and one-half from Marshfield village, and not in very good condition, and that King had three or four children. Subject to the objection that the evidence did not tend to show that the family were paupers, he was then permitted to testify that: ''The house was poorly furnished and the furniture that was there was very cheap and old material.'' Whether a per-

son is poor and in need of assistance for himself or family within the meaning of our pauper law (P. L. 3923) does not depend alone upon the amount or value of property owned by him or his visible means of support. See cases cited above. Yet when one's need of assistance is the subject of inquiry, evidence that tends to show the surroundings or condition in which he lives, his property or lack thereof, its nature and condition, his income from whatever source,' the ability and willingness of others to aid him, etc., is admissible for what it is worth, its weight being for the trier in the circumstances disclosed. This evidence was admissible.

Subject to the objection that it was immaterial and irrelevant, the doctor was allowed to testify that he saw nothing at King's house out of which he could collect a bill against King. This evidence had the same tendency as that just considered, and for the same reason was admissible.

The doctor was permitted to testify, subject to objection that it was immaterial, that he sent King statements of his bill, but as nothing further appeared concerning this, the evidence was harmless.

Burt Potter, Marshfield's overseer at the time the girl was injured, testified that he went to King's place to see him about the doctor's bill, but did not go inside the house or look around much, and that King then told him that he could not and would not pay the bill. He was then allowed to testify, subject to the objection that it was immaterial, incompetent, and irrelevant, that he did not know of any property that King had that could be used to pay the bill. While the probative value of this evidence may have been slight, the witness apparently spoke from his own knowledge, and its admission was not error.

Archie Bullard, Marshfield's overseer at the time Mrs. King died, testified that he knew King, knew him before he, King, came to Marshfield, and subject to objection (ground not stated) testified: ''I know that Mr. King didn't have anything. He was having a hard time. No doubt about it,'' and that in May or June, 1932, King had nothing, to his knowledge, other than household furniture. This was properly admitted.

Earl Lamberton testified that he was tax collector for Marshfield during all the time King lived there; that in 1932, and before and after, he investigated to ascertain what property King had, and subject to the objection that it was incompetent

and immaterial, was allowed to testify that he could not find any property that belonged to King. This was admissible.

At the close of plaintiff's evidence, defendant moved for judgment on grounds needless to state as will presently appear, and excepted to the denial of its motion. It waived this exception by proceeding with its defense. *Stevens* v. *Blood*, 90 Vt. 81, 96 Atl. 697. Analogous cases are *Hobbs & Son* v. *Grand Trunk Ry.*, 93 Vt. 392, 108 Atl. 199, and *Campbell et al.* v. *Bryant*, 98 Vt. 486, 129 Atl. 299.

In its brief defendant says that it offered to show ''that in 1933 King continued to furnish board for a poor person named John Nunn, for which plaintiff town had previously paid King One Hundred Seven Dollars and Twenty-five cents, but that when Archie Bullard became plaintiff's overseer (in March, 1933) he refused to continue such payments,'' and it was excluded subject to its exception. All that is said regarding this evidence is that it was material on the question of King's financial condition. Without an offer to show how long King boarded Nunn after Bullard refused to pay, and that he did it under circumstances that made the town liable therefor, it had no tendency to show what is claimed for it. In the circumstances it was properly excluded.

Defendant excepted to the refusal of the court to find as requested that: ''Twenty dollars was paid to Oliver King on the order of the selectmen of the town of Marshfield, said order being 'for injury to Dorothy May King,' by check of the Treasurer of said town, June 6, 1932, and concurrently therewith said Oliver King executed a receipt for such sum and in consideration thereof a release to said town 'for suits, for damages losses and costs in said case,' and that the payment to Dr. Corson for attending said Dorothy was not made until the day following the securement of such release.'' The court found that the day preceding the date of the town order to the doctor ''the selectmen of the town of Marshfield paid Mr. King twenty dollars in settlement of contingent claims regarding the injury to his girl, and 'in full payment for expense money paid out for Dorothy May King, injured in a swing and loss of her finger.' '' It is urged that the requested finding was material in support of defendant's claim that the payment to King and payment of the doctor's bill were made by the town officials because of the erroneous belief, on their part, that the town was

liable for expenses and damages because the girl was injured on the school ground. The only evidence in support of such claim, called to our attention, is the receipt and release signed by King which reads as follows: ''Received of Town of Marshfield Twenty Dollars being full payment for expense money paid out for Dorothy May King injured in a swing loss of finger in School Swing. And I hereby release said Town for suits for damages losses and costs in said case,'' and the recital in the order which the selectmen drew on the treasurer to pay King that it was ''for injury to Dorothy May King.'' This was not sufficient to require the finding asked for. The settlement by the selectmen with King, though the result of an erroneous belief on their part as to the town's liability, could not, by reason of anything that appears, affect the town's liability for the doctor's bill which the overseer had previously incurred, nor is there anything to compel the conclusion that it was so intended. King was paid on the selectmen's order; the doctor was paid on the overseer's order.

Defendant requested the court to find that the doctor's services were sought and engaged by the school authorities of the Town of Marshfield because of an apprehension on their part that they, or the town, were legally liable for the injuries sustained by the child while using the swing on the school grounds; and that such services were engaged without consulting with, or authorization by, the child's parents or either of them, and excepted to its failure to do so. It is enough to say that the doctor's services were not engaged by the school authorities of Marshfield, and that the other matters embodied in the request have been disposed of.

The court properly refused to find as requested regarding board furnished by King to Nunn in 1933, since it is admitted that the evidence offered to prove this was excluded.

The court properly declined to make other findings requested by defendant for reasons already stated.

Defendant excepted to the finding that ''the doctor knowing the girl's father and his ability to pay, refused to operate and take care of the case until the Overseer of the Poor of the Town of Marshfield had become holden for his reasonable charges,'' and refers to the following testimony of the teacher who went to the doctor's office with the girl: ''As I remember, we were simply getting permission to remove the finger. Being

unable to get Mr. King by telephone, we called the Town Overseer and that is all'' which it says was undisputed. This witness testified on cross-examination, however, ''I was in the office (Corson's) but I couldn't tell you just what he (the doctor) said.'' And, as has been seen, both the doctor and overseer testified that the doctor's bill was authorized by the overseer. The finding was proper.

    The finding that when the girl was injured King was poor and in destitute circumstances is supported by the evidence.

    Defendant excepted to the finding that there was no evidence to show how much, if any, of the amount paid King for Nunn's board accrued, or was due, June 6, 1933, on the ground that the evidence showed it was all paid prior to January 31, 1933. Assuming that defendant is right about this, it is not apparent how it was harmed by the finding. The only relevancy of this evidence was on the question of King's financial status either at the time the girl was injured or when his wife died. The evidence of the overseer, Potter, that King began boarding Nunn in May, 1932, and that he paid him once a month at the rate of $3 a week was undisputed. It thus appears that King had received none of this money at the time the overseer authorized the doctor's bill; and if King received the last payment of $12 or $14 in January, 1933, it had no probative value to show that the December following he had sufficient means to pay his wife's burial expenses.

Defendant excepted to the judgment and says that it should be reversed ''for the reasons given in connection with the exceptions to the evidence, to the refusal of the court to find as requested, and to the findings as made.''

    No reason stated in connection with these exceptions requires a reversal. None other is advanced regarding the impropriety of the judgment. The findings, and such inferences as the trial court might fairly have made therefrom, which this Court, in support of the judgment, will presume it made, *Labor* v. *Carpenter et al.*, 102 Vt. 418, 422, 148 Atl. 867, clearly support the judgment.

*Judgment affirmed.*