TOWN OF MANCHESTER *v.* TOWN OF TOWNSHEND

October Term, 1938.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed November 1, 1938.

*Franklin P. Jones* for the plaintiff.
*Herbert G. Barber* for the defendant.

JEFFORDS, J. This is an action brought under sec. 3923 of the Public Laws to recover of the defendant the expenses of pauper aid furnished one Carl Woodard and his family by the plaintiff. Trial by court. Judgment was rendered for the defendant and the case comes here on exceptions of the plaintiff.

This assistance was furnished at various times over the period extending from December, 1934, to August, 1937. It was found that Woodard was, during this time, a poor person and in need of assistance.

The required statutory notice was given by the plaintiff to the defendant.

The plaintiff claimed that Woodard last resided in defendant town for the space of three years supporting himself and family and brought this action to recover from defendant on that theory.

It was found that the residence of Woodard was in defendant town as early as May 31, 1912, and so continued therein until 1916. During all this time John H. Ware was both overseer of the poor of Townshend and one of the trustees of the Howard trust fund hereinafter referred to.

In 1914 and 1915 Ware helped Woodard and his family a little, but not much, each year with funds derived from the Howard trust.

The Court also found as follows:

12. "The Court finds that the said Carl Woodard and his family last resided for the space of three years, supporting himself and family, prior to his being helped as aforesaid by the Town of Manchester, in the Town of Townshend, unless as a matter of law certain payments to him or articles furnished him through J. H. Ware from funds provided from the Howard trust, as will be hereinafter more particularly set forth constituted such aid as prevented the three years required for residence under the pauper law from running."

20. "In February or March 1916, Carl Woodard became sick and in need of assistance and applied to J. H. Ware, as Overseer of the Poor, of said town, for assistance. Prior to this time no application was made to J. H. Ware by Woodard for as-

sistance, but said Ware did help as hereinbefore set forth, and the funds for the assistance of Woodard in February or March, 1916, were solely from the Howard trust.''

The plaintiff excepted to the latter part of Finding No. 12 commencing with ''unless as a matter of law,'' etc., on the grounds that as a matter of law such payments did not interrupt the acquisition of a settlement, and for the further reason that even should the payments from the Howard trust be held the equivalent of town aid, still such payments would not stop the acquisition of a residence in this case, because the aid was not necessary and no application was made therefor.

The plaintiff requested the court to find in substance that prior to January, 1916, Woodard was not a poor person in need of assistance and that the help furnished him prior to that date from the Howard trust was not necessary under the pauper law.

These requests were refused by the court and the plaintiff excepted to this refusal on the grounds, in substance, that these facts were material to the plaintiff's case, especially in view of Finding No. 20 to the effect that prior to February or March, 1916, no application was made to J. H. Ware by Woodard for assistance and on the further ground that the requested findings were supported by the uncontroverted evidence in the case.

The plaintiff excepted to the judgment on the ground that it was not supported by the findings both as a matter of law and fact.

We will first consider the question of the effect of the finding of the court relative to the absence of application by Woodard prior to February or March, 1916, raised by the various exceptions of the plaintiff heretofore noted. What we have to say is based on the assumption that an ''application'' is required in such a case.

The court did not find that *no* application was made. It found that during the time in question no application was made *by Woodard.*

There is no claim made that the furnishing of aid by the overseer of Townshend was not in good faith.

It is not required that the ''application'' be made by the pauper personally. This has been held in many of our cases:

*Walden* v. *Cabot*, 25 Vt. 522; *Weston* v. *Wallingford*, 52 Vt. 630; *Waitsfield* v. *Craftsbury*, 87 Vt. 406, 89 Atl. 466, Ann. Cas. 1916C, 387; *Barnet* v. *Norton*, 90 Vt. 544, 99 Atl. 238; *Hardwick* v. *Barnard*, 102 Vt. 330, 148 Atl. 408; *Peabody* v. *Holland*, 107 Vt. 237, 178 Atl. 888, 98 A. L. R. 866; *Marshfield* v. *Cabot*, 107 Vt. 409, 180 Atl. 897.

■ It was said in *Hardwick* v. *Barnard, supra,* at page 334, 148 Atl. at page 410: "The plaintiff's right to recover is not affected by the fact that James Learie, Sr. has not himself asked the town of Hardwick for assistance. The circumstances were brought to the attention of the overseer of the poor and relief requested by the hospital authorities. It is not required that the town should wait until the pauper himself shall have made application for help. *Walden* v. *Cabot*, 25 Vt. 522, 526. The duty of the overseer to afford relief arises and becomes ineludible whenever he receives information, however conveyed, that relief is required. *Waitsfield* v. *Craftsbury*, 87 Vt. 406, 408, 89 Atl. 466, Ann. Cas. 1916C, 387. It is his duty to provide for the immediate relief of all persons residing or found in the town when they fall into distress and stand in need of relief. *Walden* v. *Cabot, supra*; *Weston* v. *Wallingford*, 52 Vt. 630, 633."

■ The plaintiff's claim required proof of all its essential facts: these included a three-year, self-supporting residence in the defendant town. The burden of proof as to these facts was on the plaintiff throughout the trial. *Georgia* v. *Waterville*, 107 Vt. 347, 178 Atl. 893, 99 A. L. R. 453; *City of Rutland* v. *Wallingford*, 109 Vt. 186, 194 Atl. 360.

■ "All the defendant was called upon to do was to go far enough with its evidence to prevent a 'preponderance in the plaintiff's favor. It made no affirmative defense. It was under no duty to prove anything. Its 'sole function was to repel and defeat' the plaintiff's case." *Georgia* v. *Waterville, supra,* page 352, 178 Atl. page 895.

■ It may be that the showing by the plaintiff that Woodard lived in Townshend for more than three years was of such a nature as to make a *prima facie* case that he was, during that time, self-supporting, so as to place on the defendant the burden of going forward with the evidence to show that during that time he received required pauper help from that town. *Belmont* v.

*Morrill,* 73 Me. 231; and see *Georgia* v. *Waterville, supra,* and *City of Rutland* v. *Wallingford, supra.*

But this did not affect the burden of proof which always remained on the plaintiff. *Georgia* v. *Waterville, supra; City of Rutland* v. *Wallingford, supra.*

■ While the burden of the evidence, or of going forward with the evidence, may pass from one party to the other as a case progresses, yet the "burden of proof," meaning the obligation to establish the truth of the claim upon which the plaintiff rests his case, is upon him throughout. *White River Chair Co.* v. *Conn. River Power Co.,* 105 Vt. 24, 39, 162 Atl. 859; *Rutland Ry., Light & Power Co.* v. *Williams,* 90 Vt. 276, 98 Atl. 85; *Colston* v. *Bean,* 78 Vt. 283, 62 Atl. 1015.

It cannot be said that the defendant did not sustain its burden of going forward with the evidence on this point.

■ From the evidence it appears that Woodard worked a good share of the time in question for Ware, the overseer, who was in a good position to have it brought to his attention that town relief was needed. Ware testified that he, as overseer, had to help Woodard a little.

■ Acts which purport to have been done by public officers in their official capacity, and within the scope of their duty, will be presumed to have been regular and in accordance with their authority. *Lycoming Fire Ins. Co.* v. *Wright,* 60 Vt. 515, 521, 12 Atl. 103; *Ryan* v. *Orient Ins. Co.,* 96 Vt. 291, 307, 119 Atl. 423; *City of Albany* v. *McNamara,* 117 N. Y. 168, 22 N. E. 931, 6 L. R. A. 212.

Therefore there was evidence that the overseer received information that aid was required.

■ In order to sustain its burden of showing a self-supporting residence, i.e., no pauper aid from the defendant during the three years in question, the plaintiff then had first to prove that the relief given was not such pauper aid as required by law because, as claimed by it, no application within the meaning of the law was made. It was essential to its claim on this point, in view of the state of the evidence, that it obtain a finding to this effect.

From the judgment in this case it is apparent that the lower court found that the plaintiff had failed to sustain its burden of proof on this point.

144

Every reasonable intendment is to be made in support of the judgment. *Kelley* v. *Seward,* 51 Vt. 436; *Cleveland* v. *Rand,* 90 Vt. 223, 229, 97 Atl. 989.

Doubtful findings are to be so read as to support the judgment, if they reasonably may be. Doubt as to the weight of the evidence will be resolved against the exceptor. This Court will read the evidence in the light most favorable to the findings. *Reed* v. *Hendee,* 100 Vt. 351, 137 Atl. 329, and cases cited therein.

The next claim of error has to do with the refusal of the court to find as requested by the plaintiff that during the time in question Woodard was not a poor person in need of assistance and that the relief given was not necessary. What we have to say here also applies to the ground of exception to finding No. 12 to the effect that the payments set forth therein were not necessary.

The plaintiff claims that the uncontroverted evidence in the case entitled it to these findings.

But here again, as in the position taken by it as to the "application" considered above, the plaintiff confuses burden of proof with the burden of going forward with the evidence. What we have already said on this subject applies with equal force here.

The burden of proof was always on the plaintiff to show a three-year, self-supporting residence by Woodard in Townshend.

There was no burden of proof on the defendant to show that Woodard during the time in question was a poor person in need of assistance and that the relief furnished was necessary. It merely was required to go forward with the burden of evidence to repel and defeat any *prima facie* case raised by plaintiff's evidence of a self-supporting residence.

A review of the evidence shows that it did so go forward. During the time in question Woodard received comparatively small wages when he worked. Sometimes he received two dollars and a half a day. At other times ten dollars a week and at other times thirty dollars a month and board. He had a wife and during the time in question a child was born to them. Mrs. Woodard testified that they were poor. As has appeared, Ware testified that during 1914 and 1915, he, as overseer of the poor, had to help Woodard a little.

The defendant in its aid on this question is entitled to the presumption above referred to relating to public officers.

When the defendant showed relief given by its overseer, the burden of going forward was then cast on the plaintiff and it was incumbent on it to prove that the relief was not furnished to Woodard as one standing in need of relief. *Oakam* v. *Sutton,* 13 Metc. (Mass.) 192. It was also incumbent upon it, in order to recover, to obtain an affirmative finding to this effect.

■ The evidence was not uncontroverted on this issue as claimed by the plaintiff and its weight was for the trial court to determine. No error is made to appear.

The last question has to do with the claim of the plaintiff that inasmuch as all the funds paid for the relief of Woodard came from the Howard trust such were not town funds but were from a private charitable trust.

In 1881 one Aurelius C. Howard died testate. Under one of the provisions of his will he directed that the sum of ten thousand dollars be set apart and given to the defendant town, to be under the control of the treasurer of that town or one or more trustees to be elected by the town for that special purpose. They to give bonds and to account as the town directed.

"The interest of said ten thousand dollars to be applied in providing for and comfortably supporting the poor of said town of Townshend as long as my lineal descendants shall not require the same for their support and maintenance."

The defendant town by vote in 1881 accepted this legacy with the terms and conditions relating to the same and three trustees were elected.

At all times material to this case J. H. Ware was both overseer of the poor of Townshend and one of the trustees of the Howard trust fund.

The help furnished Woodard from the trust funds did not appear in the town reports for 1914 and 1915 as aid furnished to a poor person, under any name, but was included in the poormaster's report under an item or items of "transients."

Another trustee kept the trustees' account book, and Ware went to him quite often during the year with bills that he had paid for different families. As to some of these bills the other trustee would say, "Well, let that bill go in with your transient," or if it was quite a sum he would say, "We will appropri-

ate that.'' Ware's books when the auditors met every year showed how much the trustees appropriated and how much they gave him as overseer of the poor to pay poor bills with.

Some years the income from the trust fund would pay all the town's expense for poor. Other years it would not. The trustees at times would appropriate specific sums for named persons. These persons would have needed help from the town otherwise if not provided in this manner from the fund. At times the trustees would vote part of the funds to the poormaster to be dispensed by him and such was the manner in which Ware obtained the money used by him for the small amounts expended in the aid of Woodard in 1914 and 1915. Ware's books did not show to whom this aid was given from the Howard trust with reference to Woodard. All that appeared therein was ''transient'' or ''transients'' and the amount. Ware, however, accounted both to the trustees of the fund and to the town auditors for funds that came into his hands in this manner and acting as overseer Ware furnished the above stated help to Woodard.

The name of Carl Woodard does not appear in the town reports of the Town of Townshend during the years 1912 to 1916, inclusive, as being aided by the town.

If the income for any year since the establishment of the Howard trust was more than sufficient to meet the needs for which it was created, the balance would be carried over to the next or succeeding year or years as a continuing fund to be used in accordance with the provisions of said trust. If in any year the funds from the Howard trust were exhausted and application was made for assistance by the poor and needy in the town of Townshend such assistance was furnished from the general town fund and the names of the people so assisted appeared in the town reports.

The cases cited by the plaintiff are not in point as they have to do with assistance furnished by individuals of one kind or another to the claimed pauper or are otherwise distinguishable.

Here the case is different. This was a gift to the town to be administered by certain named people. The gift was accepted by the town and administered by trustees who gave bonds.

If the will had been silent as to the persons through whom the trust was to be administered, the case would apparently have fallen under P. L. secs. 3541-3544, which provide for the man-

agement of such property by the trustees of public funds. *Bellows Free Academy* v. *Sowles,* 76 Vt. 412, 419, 57 Atl. 996.

From the findings it appears that the income from this fund afforded the main source of funds for pauper relief for that town. The persons who received help from it would otherwise have needed help from the general funds of the town.

If as claimed by the plaintiff, the word "poor" as used in the will is more comprehensive in its meaning than the same word used in the pauper statutes, a point we are not called on to decide, it can make no difference. Its meaning plainly includes pauper poor and was so interpreted by those administering the trust. From the findings, it does not appear that aid was ever given from it to other than the pauper poor of Townshend.

When funds were appropriated from this trust fund to the overseer to spend for relief of the poor of the town he accounted for the expenditures of the same both to the trustees of the fund and to the town auditors.

Detriment to the town resulted from expenditures from this fund.

The fact that the name of Carl Woodard did not appear in the town reports during the time in question as being aided by the town is of no material consequence.

We hold that the funds when appropriated by the trustees and turned over to the overseer for relief of the poor of the town became town relief money to the same extent as though the money had come to him from the general town funds.

No error appears.

*Judgment affirmed.*