NORTH TROY GRADED SCHOOL DISTRICT *v.* TOWN OF TROY ET AL.

Special Term at St. Johnsbury, February, 1907.

Present: ROWELL, C. J., TYLER, and MUNSON, JJ., and HALL, SUPERIOR J.

Opinion filed May 10, 1907.

*Wills — Trusts — Construction — Execution — Supervision by Courts — School Districts — Funds — Bequests—Statutes— Construction—Estoppel — Change in Position — Municipal Corporations—Creation by Implication—Interest—Time of Beginning.*

A will left certain property to the town of Troy in trust "for all the school districts and fractional school districts in said town and all that may hereafter be in said town," the interest to be divided by the selectmen each year "forever," so that each fractional part of a school district should receive one-half as much as a whole district, and each whole district to draw the same amount. When the will was made, and for some time after the testator's death, there were nine whole and four fractional school districts in Troy, but subsequently the whole town became a single school district, under the legislation creating the town school district system, and still later the orator school district was incorporated by special Act of the Legislature, comprising less than one-half of two of the old school districts. *Held* that the orator school district is entitled to one-half of the income of the fund, since there are but two school districts in the town.

The provision of the orator's charter, that it should have the same share of income from bequests to the town of Troy that it would by law receive as "an unincorporated district," means that it should receive the same share of such bequests that it would if it were a school district not incorporated by special Act of the Legislature.

Where a will left funds to a town in trust, the income thereof to be divided annually by its selectmen among its school districts in a specified manner, the selectmen, in making such division, act solely under the authority derived from the will, and an erroneous division made by them neither binds the parties, nor precludes the courts from revising and correcting it.

Since defendant school district has made no change in its situation on account of the orator's conduct in not claiming its proper share of the income in question, the orator is not bound by its conduct in that respect.

Where, in a suit in equity against a town, its selectmen were cited in as defendants, in their official capacity, but the bill made no case against them till an amendment was filed after their respective terms had expired, the bill will be dismissed as to them, with costs of appeal.

Where a will left funds to a town in trust, the income thereof to be divided annually by its selectmen among its school districts in a specified manner, a decree against one of the selectmen as to the manner of dividing the income will be as effective as against all

2

of the board, since their authority is private and all must concur in its execution.

Where a town is trustee under a will of certain funds, the interest thereon to be divided annually by its selectmen among its school districts, it is a proper and necessary party to a suit in equity to construe the will and to restrain an alleged improper execution of the trust.

Where powers and privileges are conferred by statute upon a body of men or the inhabitants of a district, and the duties imposed cannot be exercised and enjoyed without corporate capacity, such capacity is created by implication, if that appears to be the intent of the Legislature.

A town school district, existing under our statute creating the town school district system, is a body corporate by necessary implication, separate and distinct from the town, since it has, in effect, creation by name, perpetuity of existence, unity of person, and governing boards elected at town school district meetings.

In a suit in equity against a town, as trustee under a will of a certain fund, and a town school district, as one of the beneficiaries of the fund, for a portion of the fund improperly paid to the town school district, in which there was a recovery, the town school district should pay interest from the time it was made a party and the original bill was served upon it, though the original bill was against the town alone, for the town school district knew from the bill that the suit was brought for the recovery of money it had received.

Although the bill alleges nothing against the town school district in regard to the money, but only against the town, nor does it pray for relief against the town school district, except by the general prayer, but only against the town, this will not defeat the bill where the case has gone to the extent of settling the facts, and they show that the orator is entitled to relief, but the orator will be allowed to amend its bill, so that it can obtain the relief to which it is entitled.

APPEAL IN CHANCERY, Orleans County. Heard at Chambers, July 19, 1906, on the pleadings and an agreed statement of facts, *Watson,* Chancellor. Decree, that the orator is entitled annually to receive one-half the income of the Moses Dodge Fund, and that the defendant town school district pay to the orator all the income of said fund that said defendant has annually

received, from the year 1896 to the commencement of this suit, in excess of one-half such annual income, with interest on each annual overpayment from the time it was received. The defendant appealed. The opinion fully states the case.

*O. S. Annis* and *J. W. Redmond* for the orators.

By the common law, if a part of the territory of a school district is separated from it, and annexed to, or organized into, another, the original organization retains all its property, property rights, and franchises, unless some statutory provision is made to the contrary. *Winona* v. *Sch. Dist.,* 40 Minn. 13, 12 Am. St. Rep. 687; *Briggs* v. *Sch. Dist.,* 21 Wis. 348; *Joint Sch. Dist.* v. *Sch. Dist.,* 92 Wis. 608; *Grenville* v. *Mason,* 53 N. H. 515; *Westfield* v. *Coventry,* 71 Vt. 175; *Rutland* v. *Proctor,* 68 Vt. 153. This explains the reason for that provision in the orator's charter relative to its share of the public money, and of the income from bequests and legacies to the town of Troy for the benefit of its public schools.

*Young & Young* for the defendant.

The selectmen in making the annual division of the income from the Dodge Fund acted in their private capacity, as appointees of the testator, and not in their official capacity. *School Dist.* v. *Bridport,* 63 Vt. 383; *Welsh* v. *Village of Rutland,* 56 Vt. 228; *Fisher* v. *Boston,* 104 Mass. 87; *Davenport* v. *Johnson,* 49 Vt. 403.

It was error to give the orator interest from the date of the various overpayments. *Dalrymple* v. *Whitingham,* 26 Vt. 345; *Newell* v. *Keith's Exr.,* 11 Vt. 214; *Everts* v. *Nason's Est.,* 11 Vt. 122; *Langdon* v. *Castleton,* 30 Vt. 285.

In granting the orator's charter, the Legislature could impose any terms and conditions it chose, and such terms and conditions as it did impose are binding on the orator. *Commissioners of Laramie Co.* v. *Commissioners of Alabama Co. etc.,* 92 U. S. 307; *Windham* v. *Portland,* 4 Mass. 389; *Newchester* v. *Bristol,* 3 N. H. 71; *Kies* v. *Lawrey,* 199 U. S. 233; *Barre* v. *School Dist.,* 67 Vt. 108; *Sheldon* v. *Stockbridge,* 67 Vt. 299.

There is no allegation in either the original or the amended bill that the defendant Town School District has ever received any of the income of the Dodge Fund. Hence, it was error to decree that said defendant should refund any part of such income. *Thomas* v. *Warner,* 15 Vt. 110; *Barrett* v. *Sargent,* 18 Vt. 365.

ROWELL, C. J.    On March 7, 1890, Moses Dodge, who then was, and for forty years had been, a resident of the town of Troy, made his will, whereby he gave the residue of his estate to said town in these words:

"The residue and remainder of all my estate, both real and personal, I give to the town of Troy in trust, and all of the same to be held in trust by said town for all the school districts and fractional school districts in said town, and all that may hereafter be in said town; the same to be known and forever called The Moses Dodge Fund, and all of the same to be kept at interest by said town forever, and the interest on all of the same to be divided each year by the selectmen of said town on the Friday next before the last Tuesday of March of each year hereafter forever after my death between the school districts and the fractional parts of school districts in said town as aforesaid, each fractional part of a school district, one-half as much as a whole district, and each whole school district to draw the same amount each year."

The testator died at Troy on October 3, 1890, and his will was duly probated, and the residue of his estate, amounting to $13,272.62, was paid to the town under the will, and the town still holds it.

Before and at the time in question, and up to the time the town system was adopted by the Act of 1892, the several district system prevailed in Troy, under which at the time in question the town was divided into nine whole districts and four fractional districts; and so when the town became a single district under said act, as it did, there being no other district in town, it was entitled to the whole income of said fund.    But in 1894, the Legislature, at the special instance and request of the inhabitants of the incorporated village of North Troy, incorporated that part of the town comprising the territory of said village as a graded

school district, with all the powers, duties, and privileges granted by law to such districts, and giving it the same share of the public money, and the same share of income from bequests and legacies to the town for the benefit of the public schools of the town, that by law it would receive as an unincorporated district. This district is the orator, and consists of considerable less than half of the territory of old school districts Nos. 1 and 10 as they existed before and at the time the Act of 1892 took effect, and does not include all of either of said districts. The orator's grand list is about a third as much as that of the rest of the town. Up to and including 1905, the income of said fund has been divided between the orator and the town district on the basis of two-elevenths to the orator and nine-elevenths to the town district. But now the orator claims one-half of said income because there are but two school districts in town, and seeks a decree to that effect, and also to recover what it has been deprived of by the divisions that have been made.

The testator never lived in what is now the orator district, but most of the time, in one of the smaller districts of the town. He was fully conversant with the division of the town into school districts, and knew in what subjects the law required instruction to be given in the schools maintained therein.

The defendants claim that a school district like the orator, incorporated by special Act of the Legislature, was not in the contemplation of the testator when he made his will, nor what he meant by the words, "school districts," as therein used; but that he contemplated, and that the will should be construed to mean, only school districts created under the general law of the State, such as he had always known and been accustomed to.

But when we read the will in the light of the circumstances in which it was written, and consider, as we may, that the testator knew that the town could make and unmake, unite and divide, its school districts at pleasure, and thereby increase or diminish their number; and not only that, but could abolish them altogether, and adopt the town system, as the law had been for twenty years; and that the Legislature could create, and for a long time had created, graded school districts by special act, and could, in fine, control the whole system of public schools; and especially when we consider that his gift was to go on forever, and that he could not foretell what changes might take place,—

it can hardly be supposed that he undertook to divine whether the. school district system would go on in the town as long as his gift, and made his will upon the theory that it would; but rather that he knew he could not foretell how that would be, and adopted a basis for dividing the income that would be likely to fit any change that might be made in that regard, and so took no note of population, average attendance, school age, territorial extent, nor any other thing save only the number of districts, which he knew was liable to change at any time, as the language of his will shows. He did not seem. to care how many school districts there were, and why should he care whether they were formed under general or special law? For his purpose, a school district was a school district, however formed. Suppose the town itself, as the testator knew it might as the law then was, had made the orator's territory into a district, and all the rest of the town into another, would it be said that the testator did not contemplate that, and that the income could not be divided between them on the basis of the will? Hardly that, we think. Then why say that, merely because the orator was created by special act? It is clear that you cannot. It is unnecessary to say that the language of the will must control, and that language is, that each whole school district shall draw the same amount each year forever.

But the defendants say this is inequitable. If that is so, nevertheless, the language of the will must control, and no warrantable construction can make it otherwise.

The defendants also say that though the orator is entitled to one-half under the will, its charter limits it to a less amount, if indeed it is entitled to anything thereunder, because of the provision that it shall receive the same share of the income that by law it would receive as an unincorporated district, under which, they say, strictly speaking, it could receive nothing, because, as the law then stood, it had, and could have, no existence as an unincorporated district. But that aside, they suggest a division in proportion to the number of scholars of the same grade in the two districts; but claim that a proper construction of the charter would limit the orator to the same proportion that it received as an unincorporated district before the adoption of the town system, which should in no event exceed two-elevenths, and in the future, that that amount should be

reduced in the proportion that the scholars resident in that part of Nos. 1 and 10 not included in the orator, bears to the scholars resident therein.

The orator contends that its charter means that it is to receive the same share of the income that it would receive were it a school district not incorporated by special act—a school district without a special charter—an unincorporated school district. And this seems to us to be the fair import of the act. The other view, although worthy of consideration, does not strike us as tenable. The obvious purpose of the Legislature was, not to say definitely what share of the income from bequests and legacies the orator should receive, but, as a basis for determining that, to give it the same share in all cases that it would receive were it an unincorporated district, and leave that to be determined under the general law applicable to the particular case. The inquiry is, then, what share of the income in question would the orator receive were it, what its charter assumes it to be for this purpose, an unincorporated district; and the answer is, as we construe the will, one-half, for then there would be, as there are now, only two school districts in town, and the orator would be one of them.

But the defendants object that as there is in the will no suggestion of appeal from the action of the selectmen in dividing the income, their division, made in good faith, is final and conclusive between the parties, especially as the money has been accepted and received thereunder and appropriated; that if the orator intended to question the correctness of their decision, it should have declined to receive the money, and brought suit for a construction of the will and directions to the selectmen; but not having done that, but having accepted and used the money distributed to it by the selectmen, it is bound by their decision and its own conduct, and precluded from relief in respect of past divisions.

The defendants do not claim that the selectmen were acting in their official capacity in making the division, but expressly say they were not, and were in no sense the agents of the town, and had no power to bind it, but were acting solely as the appointees of the testator; and this, we think, is the correct view of the matter. This being so, the proposition contended for cannot be maintained, for the will cannot be construed to give

finality to an erroneous division by the selectmen. They derive their authority solely from the will, and that directs just how the division shall be made, and it must be made accordingly; and if it is not, it is without authority and void, and neither binds the parties nor precludes the courts, but is subject to revision and correction.

Whether the orator is bound or not by its conduct, is principally a question of the inequity of permitting its claim for the money to be enforced—an inequity based upon some change in the situation of the defendants made in reliance upon that conduct. But as it does not appear that any such change was made, it cannot be said that the orator is bound by its conduct in the respect claimed.

The defendants Hunt and Wheeler claim that they should have been hence dismissed with costs. The decree takes no note of them in any way. The claim is based upon the idea that they were not made parties until the amended bill was filed, when they had ceased to be selectmen by the expiration of their term of office, and hence were not even proper parties. But the fact appears to be that they were cited in nearly a year before that, when they were in office, under an order for that purpose following a decision on demurrer that they were necessary parties. After being thus cited they appeared, and moved to dismiss because the bill as it then stood made no case against them; and thereupon, on hearing, it was ordered that the motion be sustained, and the bill dismissed with costs, unless the orator amended its bill in the respects complained of in such a time, and thereupon the amended bill was filed, though not within the time limited, but no objection appears to have been made on that account.

It is a general rule that no one should be made a party defendant to a bill who has no interest in the subject-matter of the suit and against whom no decree can be made. But here these defendants could have been decreed against while in office by way of directing them how to divide the income, and enjoining them from dividing it otherwise, and so they were proper parties, at least, when cited in. But now, having gone out of office, which they did before the amended bill was filed, no decree can be made against them, for they could not obey it if there should be, and the court will not do a nugatory thing,

as is often said in mandamus proceeding, in which the court never commands the doing of a thing by one who would have no power to do it if commanded. Therefore we think that the bill should be dismissed as to these defendants, with costs in this Court, but whether with costs below or not we leave to be there determined.

The defendant Peck is still a selectman, and has been since before the bill was brought; and although he is the only member of the board who is a party to the suit, yet a decree against him will be as effective as one against all the members of the board, for their authority is private and not public, and therefore all must concur in its execution.

The town claims that it is neither a necessary nor a proper party, for that it has received none of the income in question, and therefore is not liable for it; that the selectmen, in dividing it, were not its agents, but the agents of the testator, and that it is not liable for what they did, however erroneous, nor for the results of it; that the only duty the will imposes upon it is, to take the bequest, invest it, and pay the income to those designated by the men acting as its board of selectmen, all which it has done. But this claim fails to note that the town's trustee-ship gives it the legal title to the fund, and therefore makes it a proper party at least; and the general rule is that when the suit is by or against the beneficiaries, the trustee is a necessary party. Story's Eq. Pl. §207. And besides, as the town is the conferee of a trust and not the donee of a mere power, it can be directed and restrained in respect of its duty sufficiently to insure a proper execution of its trust; and for this reason also it is a proper party. *Bacon* v. *Bacon,* 55 Vt. 243, 249.

But this does not determine whether the town is liable or not, for that depends upon whether or not the town and the town district are separate and distinct legal entities; for if they are, the town district being the one that has received the money, is the one liable for it.

Now it is settled law that though in this country corporations, public and private, are created by statute, as they are in England, though they may be created otherwise also, yet, that no particular form of words nor technical mode of expression is necessary to their creation; but if powers and privileges are conferred upon a body of men or the inhabitants of a district

and duties imposed that cannot be exercised, enjoyed, and performed without corporate capacity, such capacity is created by implication, if such appears to be the intention of the Legislature or other authority granting the powers.   Thus, in the case of *Sutton Hospital*, 10 Co. 23, 28, to the objection that in the license there were not words of *fundare, erigere, facere*, it was resolved that notwithstanding that, the grant was good, for that to the essence of a body politic two things only are requisite, namely, a corporation and a gift, and not any words of *fundare, erigere*, and *stabilire*, nor words to such effect; for no such words were contained in the said grant of H. 4, and yet it was adjudged a good chauntry, lawfully incorporated and founded; and if such words had been necessary and requisite in law, the judgment ought to have been against the chauntry, because they were omitted in the King's grant.

In the *Conservators of the River Tone* v. *Ash*, 10 B. & C. 349, the plaintiff claimed to be a corporation by act of Parliament for making and keeping the Tone navigable, whereby it was enacted that the persons therein named and their successors should be conservators of the river, and should have power to cleanse, scour, open, and keep the river navigable, and to cut and make a new channel, if need be, through the ground of other persons, making compensation to the owners.   They were also empowered to do divers other things touching the performance of their duties under the act, among which was the making of contracts binding the whole body, and to sue and be sued by the name of The Conservators of the River Tone in the county of Somerset.   It was held that as it manifestly appeared from the act that the conservators should take land by succession and not by inheritance, although they were not created a corporation by express words, they were by implication, and therefore entitled to sue in their corporate name for injury to their real property.

It has been held in this State that when a public grant emanates from the same power that can create a corporation, the grant itself creates and gives the capacity to take, and, as a corporation if necessary to that end.   *Lord* v. *Bigelow*, 8 Vt. 445.

In the *Inhabitants of the Fourth School District of Rumford* v. *Wood*, 13 Mass. 193, the question was whether the plain-

tiff had sufficient corporate capacity to maintain the action, which was for the breach of a contract to build a school house on the defendant's land, and to lease the land to the district. The statute did not expressly incorporate the district, but empowered it to raise .money by majority vote to erect, repair, or purchase a school house, and to determine its site; and it was held that by necessary implication the district had the authority requisite to execute the purpose of its creation, and therefore could maintain the action.

In *Brokin* v. *Van Valen,* 56 N. J. Law, 85, the question was whether two villages were incorporated. The statute relating to them created a board of trustees as a governing body, and conferred corporate powers upon them. The powers were limited, but they were corporate powers usually conferred upon municipalities of that grade. The Court said it was not necessary that all kinds of municipal powers should be conferred, nor that the powers bestowed should be conferred by express legislative grant, in order to create a body politic and corporate; that such express words are wanting in many instances; but if, from the whole statute, incorporation is inferred, it is enough, and that in that case it seemed conclusive, under the ordinary interpretation of the language of statutes, that corporate powers were conferred; that the power to issue bonds in the name of the village was a corporate power, and if they were not possessed of that power, the words of the statute giving the power were meaningless.

In *Levy Court* v. *Coroner,* 2 Wall. 501, the question was whether the Levy Court of Washington County, in the District of Columbia, had a legal capacity to sue in a court of justice. It was the body charged with the administration of the ministerial and financial duties of the county. It was charged with the duty of laying out and repairing roads, building bridges and keeping them in good order, providing poorhouses and the general care of the poor, laying and collecting taxes necessary to enable it to discharge its duties, and to pay the expenses of the county. *Held,* if not a corporation, in the full sense, yet it was a *quasi* corporation, and could sue and be sued in regard to any matter in which it had rights to enforce or obligations to fulfil; that this principle, a necessary one in the enlarged sphere of

usefulness that such bodies are made to perform in modern times, is well supported by adjudged cases.

In *Thomas* v. *Dakin*, 22 Wend. 9, the question was whether certain associations formed under an act to authorize the business of banking were corporations, and it was held that they were. Judge Cowen said that it was impossible for him to see the force of the argument that because the Legislature had constantly avoided calling the associations a corporation, they could not be adjudged so; that if they had the attributes of corporations, and were so in the nature of things, the court could not refuse to regard them so any more than it could to regard natural persons as such because the Legislature in making some provision for them, had been pleased to designate them as belonging to some other species. In *Commonwealth* v. *West Chester R. R. Co.*, 3 Grant's Cases, Pa. 200, it is said that a grant to perform corporate acts implies a grant of corporate powers. And in *Delaware Division Canal Co.* v. *Commonwealth*, 50 Pa. St. 399, it is said that it mattered not that the terms of incorporation were less formal than usual, since it was apparent from the act that a corporation was intended, and manifest that such an organization was absolutely necessary to the management and enjoyment of the property.

In *Mahony* v. *The Bank of the State*, 4 Ark. 620, the question was whether the bank was incorporated. It was contended that the act in question was a mere abstraction and nonentity, as it declared only that a bank should be established, designated by name. The Court said that it was true that there were no express words incorporating any particular persons, still, the fund was placed under the management and control of a directory, who were required to be elected by the Legislature, and the usual powers of banking were conferred upon them; that though the act was vague, it was capable of being understood, and that, taking it altogether, no doubt could be entertained that it was the intention of the Legislature to incorporate the directory, and that the powers and authority conferred upon them could not exist unless they were incorporated.

In the *Commissioners of the Town of Bath* v. *Boyd*, 1 Iredell's Law, N. C. 194, it was held that a legislative grant of land to the inhabitants of a town for a common, *ipso facto* created them a body politic for the purposes of the grant, though

it did not appear that they had before been created a cor-
poration.

But where a corporation is not necessary for the purposes
of the act, one will not be implied. *Walsh* v. *Trustees of the
New York and Brooklyn Bridge,* 96 N. Y. 427.

Thus it appears that the test is, in the absence of express
words, whether the powers and privileges conferred and the
duties imposed are essentially corporate in their nature. If they
are, corporate capacity will be implied, as necessary to carry
out the purposes of the act; but otherwise, there will be no such
implication. Among the most important characteristics of a cor-
poration are continuance of existence and unity of person, by
which a perpetual succession of individuals is capable of acting
for the promotion and accomplishment of the particular object
in view.

We will paraphrase, as far as necessary, some of the pro-
visions of our various statutes upon the subject of town school
districts, to see whether they disclose a necessary implication
of corporate capacity, as the statute contains no express words
to that effect.

Each town in the State shall constitute one district for
school purposes, and the division of towns into school districts
is abolished. School districts incorporated by special acts, and
school districts in unorganized towns and gores, are not affected
by the above provision. Voters in districts incorporated by
special acts, cannot vote in town meetings for the officers of, nor
upon any matter pertaining to, the schools of the town district.
A town school district in a town in which there is an incorpor-
ated school district, may hold its annual school meeting at any
time other than the annual town meeting, provided it so votes
at a previous town meeting, notice of the proposed change being
inserted in the warning of the annual town meeting at the re-
quest in writing of ten legal voters of the town school district.
Each town shall take charge of the school houses within its lim-
its, and the property belonging thereto, and shall pay all out-
standing debts for the purchase of land, and the erection of
school houses and repairs thereon, and shall provide and main-
tain suitable school houses, the location and construction of which
shall be under the control of the board of school directors, which
each town must have, consisting of three citizens of the town,

one of whom shall be elected at each annual meeting of the town for such a term. That board has the care of the school property of the town, and the management of its schools; keeps the school houses repaired and insured; determines the number and location of schools; employs and discharges teachers, and fixes their compensation by majority vote; examines and allows claims arising therefrom, and draws orders upon the town treasurer for the payment thereof; designates the schools that shall be attended by the various pupils in the town; and makes regulations not inconsistent with law for carrying its powers into effect. The board is required to appoint a clerk, who must keep a permanent record of their proceeding, and under V. S. 728 he was to call all special town meetings for the consideration of school matters, and in case of his absence, inability, or neglect to act, some member of the board was to call them; but now, under No. 60, Acts of 1898, the selectmen are to call all such meetings in the same way that other special town meetings are called. Each town is required to maintain schools therein at the expense of the town. The grand list of town districts is made up of the ratable polls and real and personal estate therein. The selectmen must annually appropriate for school purposes a sum not exceeding one-half nor less than one-fifth of the grand list of the town district, and assess a tax to meet the appropriation; and a town district may by special vote raise a larger sum for school purposes. The town treasurer is required to keep a separate account of the moneys appropriated or given for the use of schools, and to pay thereout orders drawn by the board of school directors for school purposes. The selectmen of a town having within its limits a school district incorporated by special act, are required to divide the public school money in the treasury of the town between the town district and the incorporated district on a specified basis.

There is a body of special provisions relating exclusively to school districts in unorganized towns and gores and school districts incorporated by special acts, and to their school houses, and the maintenance of schools by them, and to their taxes and school money.

It is important to note in this connection the indiscriminate use the statute makes of the word *town,* which it often uses as synonymous with *town school district,* thereby creating doubt

and uncertainty whether the town school district is a legal entity, separate and distinct from the town itself.   But notwithstanding this, the meaning of the statute is not past finding out, for there is, when taken as a whole, a reasonably clear intent running through it all.   Thus, when it says that each town in the State shall constitute one district for school purposes, it does not mean that, for there are many towns in which there are school districts incorporated by special acts, and they are no part of the town for school purposes.   It must mean, therefore, and does mean, that that part of each town composed of abolished school districts shall constitute one district for school purposes. So when it says that each town shall take charge of the school houses within its limits, and provide and maintain school houses, it means that the town school district shall do that, for the school houses in incorporated school districts, although within the limits of the town, are not within its jurisdiction to take charge of and maintain.   So ,when it says that every town shall maintain schools therein at the expense of the town, it means that the town school district shall do that, for the town cannot maintain schools at the expense of the whole town when there is an incorporated school district within its limits.   There are other similar instances of the incorrect use of the word *town,* but it is unnecessary for present purposes to specify them.

On the other hand there are many instances in which the statute uses the words, *town district,* or, *town school district,* and when it does, they obviously mean an entity separate and distinct from the town itself, as they do when it says that a town school district in a town in which there is an incorporated school district may hold its annual school meeting at any time other than the annual town meeting.   So when it says that the grand list of town school districts shall be made up of the ratable polls and the real and personal estate therein.   So when it says that a town district may by special vote raise a larger sum for school purposes than that appropriated by the selectmen.   So when it says that an incorporated school district may surrender its charter and become a part of the town school district, and that a town school district may merge in an incorporated district.

Our statute is so much like the New Hampshire statute of 1885, adopting the town system of schools, as to induce the belief that ours was modeled upon it.   It had the same verbal inac-

curacies of which we have been speaking, and in *Sargent* v. *School District*, 63 N. H. 528, the Supreme Court of that State had occasion to construe it in respect of those inaccuracies, and gave it the same construction that we here give our statute.

Thus it appears that we have for our town school districts, (1) creation, and by name, in effect, as, in this case, The Town School District of Troy; (2) perpetuity of existence, for their duties are continuous, and will ever be, unless they are relieved therefrom by the same power that imposed them; (3) unity of person, else they could not maintain schools at the public expense, nor vote taxes for school purposes, nor do many other things that they are required to do; and (4) governing boards, elected, the statute says, at town meetings, but it means, at town school district meetings, and it is common knowledge that they are there elected.

Now these functions are essentially corporate in their nature, and cannot be performed without corporate capacity, and hence the necessary implication is that the Legislature intended to confer that capacity, that the districts might fulfil the purpose of their creation. This is the same principle by which when you make a grant, you are taken to grant every thing you can grant, necessary to the beneficial use of the thing granted.

Indeed, it may be said in a general way that the machinery that runs the town is not adapted to running the town district, especially when they are not coterminous, and it cannot be made so under the law.

We hold, therefore, that a town school district under the statute is a corporate body by necessary implication, separate and distinct from the town, whether coterminous with it or not, and all the more so if it is not. This is the construction that New Hampshire has put upon its statute. *Sargent* v. *School District*, 63 N. H. 528; *Wheeler* v. *Alton*, 68 N. H. 477.

It is claimed that it was error to allow the orator full costs, for that the order of February 26, 1904, by which the orator had leave to amend its bill on terms that it should "pay into court for the defendants their costs to the date of amendment," which was April 18, 1904, restricted the orator to costs from that time. But the order does not say that the orator shall take no costs to that time. It is silent as to its costs, and does not restrict them even by implication.

It is claimed that it was error to charge the town district with interest before the amended bill was filed.   But we think it should pay interest from the time it was made a party and the original bill was served upon it, for although that bill was against the town alone, yet the district knew from it that the money the orator was thereby seeking to recover was the very money it had received and appropriated to its own use, and then it knew that it was retaining the money against the will of the orator, and from that time on it was its duty to pay.

It is claimed that the bill does not support the decree, and that is so, largely, for the decree makes the town district pay the money, whereas the bill alleges nothing against it in regard to the money, but only against the town.   Nor does it pray for relief against the district, except by the general prayer, but only against the town.

But this will not defeat the bill, for the case having gone to the extent of settling the facts, and they showing that the orator is entitled to relief, it will not be turned out of court, but be allowed to amend its bill so it can obtain the relief to which it is entitled.

*Decree reversed and cause remanded, with mandate that on proper amendment of the bill, a decree be entered for the orator like the one appealed from, except as to costs, and except as far as necessary to alter the same in order to make it conform to and effectuate the views here expressed.*

*Let the question of costs below be there determined.*