# Town of Troy v. American Fidelity Company

[143 A2d 469]

March Term, 1958.

Opinion Filed May 6, 1958

Opinion of Motion for Reargument Filed June 27, 1958.

*Witters, Longmoore & Akley* for the defendant.

*C. O. Granai* and *Raymond L. Miles* for the plaintiff.

**Shangraw, J.** This is an action of contract against the surety on a bond. The defendant pleaded a general denial and the statute of limitations. The trial was by the court, findings were filed, and judgment entered for the plaintiff to recover $13,548.53 damages and costs.

The case is here on defendant's exceptions to (1) findings of fact, (2) supplemental findings, (3) failure of the court to find as requested, and (4) to the judgment order. This appeal poses three principal questions of law: (a) the legal effect of the original bond and the continuation certificates as limiting, if any, the amount of recovery; (b) the application of the statute of limitations to the facts of the case; and (c) the right, if any, of the Town of Troy to recover for that portion of the defalcations from funds belonging to the Town School District.

The judgment of the lower court covered defalcations of M. C. Phillips as treasurer of the Town of Troy for the years 1942 to 1948, inclusive. The writ is dated July 1, 1955 and was served July 14, 1955.

Max Carroll Phillips, herein referred to as M. C. Phillips, was duly elected Town Clerk and Treasurer of the Town of Troy, Vermont, previous to, and during the years 1942 to 1948, both inclusive. On March 11, 1937, Mr. Phillips as principal, and the American Fidelity Company, as surety, entered into a certain bond No. 79792, in favor of said town which, except as to signatures, is in words and figures following:

"Town OFFICER'S BOND

KNOW ALL MEN BY THESE PRESENTS: that we, Max Carroll Phillips of North Troy in the

County of Orleans and State of Vermont, as principal, and the

## AMERICAN FIDELITY COMPANY

of Montpelier, in the County of Washington and State of Vermont as surety, are held and firmly bound unto the Town of Troy, Vermont, in the County of Orleans and State of Vermont, in the penal sum of Four thousand dollars, to be paid unto the said municipality for which payment well and truly to be made, the said principal binds himself, his heirs, executors and administrators, and the said surety binds itself and its successors firmly by these presents.

Signed and sealed this 11 day of March, A. D. 1937.

## THE CONDITIONS OF THIS BOND ARE SUCH

That if said Max Carroll Phillips shall well and faithfully execute the office of Clerk and Treasurer for said municipality for the term for which he was duly elected on the 2nd day of March, 1937, and shall at all times faithfully account for all the moneys and other things which come into his hands and possession by virtue of his said office, and shall well and faithfully perform all and singular, the duties thereof, as prescribed by law, so as to save and keep harmless and indemnified the said municipality and all the inhabitants thereof from all actions, suits, damages, losses, costs and trouble by reason of anything omitted to be done in said office, then this bond shall be null and void; otherwise to be in full force and effect

THIS BOND is subject to the following conditions:

1. This Bond shall be in force and effect during the official term above set forth and may be continued as an obligation covering any term or terms for which said officer may hereafter be re-elected by continuation certificates executed by the surety on payment of the annual premium, but the amount of this Bond shall not

by such continuations be cumulative and in no event shall exceed the sum of the Bond as above set forth.

2. The Board of Selectmen of said municipality shall at once notify the surety of any default, dishonesty or wrongful act of the officer for whom this Bond is given or for failure to perform the duties of the office, of which any member of the Board of Selectmen shall become aware, and a failure so to notify shall terminate this Bond in respect to the liability of the surety for all subsequent acts of the officer.

3. The surety may at any time terminate its liability under this Bond as to subsequent acts of the officer by a written notice stating when the cancellation takes effect delivered to any member of the Board of Selectmen at least thirty days prior to the date when the cancellation takes effect. The municipality may cancel this Bond by like notice to the surety. In case of such cancellation the unearned part of the premium shall be returned, if no claim is made hereunder."

In March of each year, from 1938 to 1948 inclusive, the defendant caused to be executed and delivered to the plaintiff a continuation certificate in the following form, except as to dates and signatures of the officials of the American Fidelity Company which are omitted, viz:

"Continuation Certificate

AMERICAN FIDELITY
COMPANY

Montpelier, Vermont

Bond No. 79792

In consideration of the renewal premium the American Fidelity Company hereby continues its bond described herein subject to all the conditions and terms thereof for the term for which the officer hereinafter named was elected on the 3rd day of March 1942

Principal
MAX CARROLL PHILLIPS    Amount    $ 4,000.00
Obligee    Town of Troy    Premium    $   20.00
Position of Principal    Clerk and
                           Treasurer

This continuation is executed upon the express condition that the company's liability under said bond and this and all continuations thereof shall not be cumulative and shall in no event exceed the sum of Four thousand Dollars."

An audit was made, by certified public accountants, of the books and records of the Treasurer, School Directors, and Treasurer of the town library, Town of Troy, as evidenced by the Annual Town Reports, for the years 1942 to 1948 inclusive. The books and accounts of Mr. Phillips, as Treasurer, including the grand list books, were audited each year in question by the town auditors according to the provisions of Public Laws, §3515, and Vermont Statutes, Revision of 1947, §3593. No shortage on the part of Mr. Phillips was discovered.

Following is a yearly breakdown of defalcations of Mr. Phillips during the period in question, indicating total shortage and respective shares of the Town, and School District, in accordance with the voted tax rates, as revealed by an audit by Mr. King of the State Auditor's office in May or June of 1954.

| Year ending | Total | Town | School District |
|---|---|---|---|
| Dec. 31, 1942 | $ $1,347.84 | $ 876.10 | $ 471.74 |
| Dec. 31, 1943 | 1,516.32 | 1,010.88 | 505.44 |
| Dec. 31, 1944 | 1,680.00 | 1,142.40 | 537.60 |
| Dec. 31, 1945 | 1,680.00 | 1,142.40 | 537.60 |
| Dec. 31, 1946 | 1,898.40 | 1,142.40 | 756.00 |
| Dec. 31, 1947 | 2,116.80 | 1,310.40 | 806.40 |
| Dec. 31, 1948 | 2,116.80 | 1,310.40 | 806.40 |
| | $ 12,356.16 | $ 7,934.98 | $ 4,421.18 |

During said periods Mr. Phillips was ex officio Treasurer of the Town School District of the Town of Troy, by virtue of

§2 of the Acts of 1935, V. S. 47, §4418.   Mr. Phillips was in charge of the entries made in the Grand List books during the whole period with which this case is concerned.

The technique of concealment used by Mr. Phillips in the various years from 1942 to 1947 inclusive, varied, but each year the Grand List Totals exactly balanced with the receipts accounted for, leaving the inference clear that the discrepancies in totaling were deliberate attempts to fraudulently conceal tax receipts, represented by the defalcations unaccounted for. The shortage each year represents taxes of the Portland Pipe Line Company and the Portland Pipeline Corporation.

The Portland Pipe Line Company owned property in the Town of Troy, appraised as real estate for years 1942 to 1945 inclusive.   Beginning with the year 1946 this property was carried on the books as owned by the Portland Pipe Line Corporation.   In 1948 it was entered on the Grand List book but apparently erased, Pl. Exh. 9.   The assessed valuation for the years 1942 and 1943 was $35,100 with a grand list of $351. In later years it was valued at $35,000 with a grand list of $350 for each year.

The Portland Pipe Line Company and the Portland Pipe Line Corporation paid its yearly tax by check.   These checks are for the total taxes assessed against said companies, less discount each year, and are exactly in amount the yearly shortages as shown in the breakdown of defalcations as above set forth in this opinion, excepting however the tax paid for the year 1947 was $1,881.60 instead of $2,116.80.   The grand list for that year was $350 and the tax rate $6.30.   The difference of $235.20 is reflected in Mr. King's audit as a defalcation for the year 1947.   Check for the year 1942 was made payable to the order of "Town of Troy, M. C. Phillips, Treasurer, Troy Vermont."   The checks for the remaining years were made payable to "Town of Troy, Vermont, M. C. Phillips, Treasurer, Troy, Vermont."

The grand list of the Portland Pipeline Company and the Portland Pipeline Corporation was not included in the Grand List Total of the town, for the years in question, and thereby not reflected in the total property taxes for which Mr. Phillips was to account.

The Grand List Book for the year 1948 shows no listing of the Portland Pipeline Corporation on the line where the name of this corporation would alphabetically appear, an obvious erasure, even though it owned property in that year valued at $35,000 with a net tax of $2,116.80 which was paid. While the pattern of mistotaling or omission of entries varied to some extent, the net result for each year was the same.

The Selectmen of the Town of Troy first learned of the shortages for the years 1942 through 1948 at the time of the audit by Mr. King, on or about May 15, 1954. On June 18, 1954 written notice was given to the defendant of said shortages. No demand was made upon the defendant prior to the bringing of this action on July 1, 1955.

█ It is fairly well settled that bonds guaranteeing the fidelity of officers and employees, if written for profit and in the course of business undertaken therefor, are essentially insurance contracts and are to be construed as such. *Town of Windsor* v. *Standard Accident Insurance Co.*, 112 Vt 426, 428, 429, 26 A2d 83; 7 Am Jur, Banks, 156, §210; 7 ALR2d 948.

█ Contracts of insurance, like other contracts, must receive practical, reasonable, and fair interpretation, consonant with the apparent object and intent of the parties. Strained or forced constructions of insurance contracts are to be avoided. *Enosburg Falls* v. *Hartford Ins. Co.*, 117 Vt 114, 121, 85 A2d 577; 29 Am Jur, Insurance, §158.

██ The language of a policy is to be strictly construed against the insurer, although the entire contract is to be construed together for the purpose of giving force and effect to each clause. Equivocation and uncertainty are to be resolved in favor of the insured and against the insurer. If clear and unambiguous the provisions must be given force and effect. *Allen* v. *Berkshire Mutual Fire Ins. Co.*, 105 Vt 471, 474-5, 168 A 698, 89 ALR 460, and cases cited. *Abraham* v. *Insurance Company of North America*, 117 Vt 75, 79, 84 A2d 670, 29 ALR 2d 783. The construction must be reasonable and not such as to deprive the insurer of the benefit of an unambiguous provision placed therein for its protection. *Abraham* v. *Insurance*

*Company of North America, supra,* citing *Corsones,* v. *Monarch Accident Ins. Co.,* 103 Vt 379, 381, 154 A 693.

■ It is the general rule that when the terms of a contract of insurance are ambiguous or fairly susceptible of two different constructions, that construction will be adopted that is most favorable to the insured; however it is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are plain and unambiguous, their terms are to be taken in their plain, ordinary and popular sense, *Abraham* v. *Insurance Company of North America, supra,* at page 80, citing *Johnson* v. *Hardware Mutual Casualty Co.,* 108 Vt 269, 277, 187 A 788.

■ There can be no doubt that a contract of insurance is ambiguous when, and only when, it is reasonably or fairly susceptible of different constructions. It has been aptly said the mere fact that the parties have differed as to the meaning of the terms of a policy does not make it ambiguous. Otherwise the mere assertion of ambiguity by a suing plaintiff would always result in a ruling of ambiguity. Such of course is not the law. *United Services Life Ins. Co.* v. *Ringsdorf,* D.C. Mun App, 91 A2d 717, 719, citing *Hall* v. *Equitable Life Assur. Soc. of U. S.,* 295 Mich 404, 295 NW 204. An ambiguity is required to appear upon the bond, or policy, or contract, and cannot be read into it by a strained interpretation. *Bradley* v. *Fidelity & Casualty Co. of New York* (1940) 141 Pa Super 85, 14 A2d 894. It is the duty of the courts to construe contracts, not to make them for the parties. *Johnson* v. *Hardware Mutual Casualty Co., supra.*

What is the legal effect of the bond and continuation certificates as limiting liability? The basic question whether the renewal of a bond or contract insuring the fidelity of an officer or employee affects the limit of liability of the surety depends primarily upon the facts and circumstances surrounding the execution of both, and the language used in the instruments. Both of these groups of elements furnish such a wide scope for construction as to have resulted in differences of opinion, and the courts have frequently pointed this out. They

have at times construed indemnity bonds and renewals as separate and distinct contracts, on each of which the surety is liable to the limit set therein for defalcations occurring during the term each is in force.

On the other hand, representing what is sometimes said to be at least the numerical weight of authority, there are many decisions that a bond and the renewal thereof are to be construed as a continuing contract, which in the same manner as a life insurance policy, is continued in force by the payment of annual premiums.

Whether a bond and continuation certificates are to be construed as separate contracts or a single continuing one is not of controlling importance. There is nothing inherent in the nature of an ordinary fidelity contract and a renewal transaction which compels the conclusion that aggregate liability shall be limited to the penalty of the original instrument. However specific provisions may have this effect. It becomes important, therefore, to examine the language of the instruments upon which this action is predicated and to construe them in the light of the principles set forth in this opinion. See Annotation, 7 ALR2d 946.

By way of aid in the construction of the bond and continuation certificates under consideration, the words "continue," "Continuation," and "cumulative," must all be given effect.

When a pivotal word is not defined either in the policy or the application it is permissible for the court to take judicial notice of its meaning as given in standard works, such as dictionaries. *Abraham* v. *Insurance Company of North America, supra,* citing *New York Life Ins. Co.* v. *Calhoun,* 97 F2d 896.

Webster's New Modern Dictionary defines "continue" as "to carry on without interruption; persist in; to remain; abide; endure; persevere." Webster's International Dictionary Second Edition, defines it as "to be permanent or durable; to endure; to last." In Words And Phrases, Permanent Edition, Vol. 9 at page 163, the phrase "to continue", "means to keep on."

"Continuation" is defined in Webster's New International Dictionary as the "act or state of continuing, or state of being continued; uninterrupted extension or succession; prolongation; propagation."

Webster's New International Dictionary defines "cumulative" as "augmenting or giving force; increasing by successive additions." In Words And Phrases, Permanent Edition, Vol. 10 at page 653, "cumulative" is defined as "that which augments by addition; that is added to something else; in law that augments as evidence, facts, or arguments." In Webster's New International Dictionary, the transitive verb "cumulate" is defined as "to gather or throw into a heap; to heap together; to accumulate." The word "cumulative" as applied to petitions for a new trial is defined as meaning "additional evidence of the same kind to the same point." *Bradish* v. *State*, 35 Vt 452, 456, cited in *Blanchard* v. *Paltiel*, 106 Vt 510, 512, 175 A 226. Black's Law Dictionary defines "cumulative" as "Additional; heaping up; increasing; forming an aggregate. The word signifies that two things are to be added together instead of one being a repetition or in substitution of the other."

The bond in part provides that it "may be continued" * * * by "continuation certificates" * * * "on payment of the annual premium," * * * "the amount of this bond shall not by such continuations be cumulative and in no event shall exceed the sum of the bond" * * *

The Continuation Certificates refer to the original bond by number, stating in part, "in consideration of the renewal premium" * * * the company "continues its bond * * * subject to all the conditions and terms thereof" * * * "This continuation is executed upon the express condition that the Company's liability under said bond and this and all continuations thereof shall not be cumulative and shall in no event exceed the sum of Four Thousand Dollars" * * *

■ It has become well settled that by express provision inserted in either a fidelity bond or contract or a renewal instrument, considered as a continuous contract, and made applicable to the periods of effectiveness of both, the extent of liability may be determined or limited. *American Bonding Co.*

v. *Morrow*, 80 Ark 49, 96 SW 613, 615; *United States Fidelity & Guaranty Co.* v. *Barber*, 70 F2d 220, 226; *Michigan Mortgage-Invest. Corp.* v. *American Employer's Ins. Co.* (1928) 244 Mich 72, 221 NW 140; *Pearson* v. *United States Fidelity & Guaranty Co.*, 138 Minn 240, 164 NW 919, 920; *Nowell* v. *Monroe* (1933) 177 Ga 648, 171 SE 136.

Reference to the cases cited in the plaintiff's brief in support of its claim that there was in force for each of the years in question a bond in the sum of $4,000., the absence of the words "not be cumulative" or similar words is noted. For this reason, if no other, the cases cited are distinguishable from this case.

Having in mind the foregoing principles, and the plain, ordinary, and popular sense of the language used in the bond and continuation certificates, considered together, we are compelled to the conclusion that the defendant's liability is limited to the sum of $4,000. and interest from July 1, 1955. In arriving at this conclusion we are not unmindful of the recognized fact that the primary object of insurance is to insure. Insurance, by reason of the complexities of business, and present day requirements of the individual and the public, has developed into a specialized field. It is common knowledge that such contracts are prepared by attorneys, company officials, or, at least by experts in this phase of our economic life. Such companies, including local agents, advertise their competence to advise and serve. In this particular case, for all practical purposes, the payment of additional premiums by the town, after the maximum limit of liability was exhausted, afforded no protection to the town.

Pursuant to the provisions of V. S. 47, §3593 (P. L. 3515) in force when the defalcations took place, town auditors were required to examine and adjust the accounts of all town and town school district officers, and, by the following section report their findings to the legal voters of the town. This was done. Acts which purport to have been done by public officers in their official capacity, and within the scope of their duty, will be presumed to have been regular and in accordance with their authority. *Town of Manchester* v. *Town of Townshend,* 110 Vt 136, 143, 2 A2d 207.

Section 1686 of V. S. 47 provides that actions on specialties shall be brought within eight years after the cause of action accrues, and not after. Sec. 1703 purports to modify §1686 by providing:

> "When a person entitled to bring a personal action is prevented from so doing by the fraudulent concealment of the cause of such action by the person against whom it lies, the period prior to the discovery of such cause of action shall be excluded in determining the time limited for the commencement of such action."

. It would seem that §1703 is merely declaratory of the common law, as recognized by this court, enacted, it may be, for the purpose of removing any doubt to be implied from the decisions. *Watts* v. *Mulliken's Estate*, 95 Vt 335, 339, 115 A 150.

From the evidence and findings of fact, it cannot be said there was any actual discovery of the shortages prior to the State audit made in 1954. It is urged by the defendant that knowledge of facts by the plaintiff, which in the exercise of proper prudence and diligence would have enabled the auditors of the town to learn of the fraud is equivalent to discovery, and that the statute commenced to run from the time, when by the use of reasonable diligence, the defalcations could or ought to have been discovered. 54 CJS 189. Even in cases where this general rule applies failing to discover the cause of action must be determined from the facts of each case. 34 Am Jur 134, 135.

Defendant contends that the statute of limitations has run against plaintiff's action, except for the causes which arose after July 1, 1947, assigning in part, the claim that failure of the town auditors to discover the errors found to have been made and shortages existing for years 1942 to 1947, both inclusive, was due to lack of prudence and diligence on the part of said auditors. An audit was made each year by the auditors of the books and accounts of Mr. Phillips as Town Treasurer, including the grand list books. The books and records of the Treasurer were likewise audited each year by certified public accountants. Shortages were not discovered until Mr. King, representing the State Auditor's Office, discovered the defalca-

tions about May 15, 1954. Until then the selectmen were not aware, nor informed of said shortages, following which, notice was given to the defendant June 18, 1954.

Defendant places considerable emphasis on the effect of the findings by the court that the "error becomes manifest" or "errors become manifest", (meaning clear, plain, or apparent). The court evidently, in its findings, had in mind the use of the above quoted words in their present, rather than past tense.

In the absence of evidence, or findings of fact, so indicating, we cannot hold as a matter of law that the town auditors were negligent for failure to discover the shortages, as such a conclusion is not supported by the evidence or facts as found. The court declined to make such a requested finding, to which the defendant excepted. The defendant suggests, at least by inference, that Mr. Phillips' knowledge of defalcations is imputable to the plaintiff as effecting the tolling of the statute of limitations. We do not subscribe to this view.

■ Mr. Phillips is regarded as a constructive trustee of funds misappropriated. *Jennings* v. *Gallagher*, 103 Vt 169, 174, 152 A 802; *Estate of Delligan*, 111 Vt 227, 237, 13 A2d 282. In the case of *Watts* v. *Mulliken's Estate*, 95 Vt 335, 115 A 150, it appears that plaintiff's bank deposit was withdrawn and concealed by her brother (the deceased) without her knowledge or consent, and she did not discover the fact until after his death nine years later. It was held that his failure to disclose the withdrawal was a fraudulent concealment of the cause of action within the meaning of G. L. 1863 (V. S. 47, §1703). In this case at page 341 it was stated: " * * * There is a well recognized exception to the general rule that the fraudulent concealment of a cause of action which will postpone the running of the statute of limitations must consist of some affirmative act. Concealment of facts by one whose duty it is to disclose them is deemed to be fraudulent. *Alter* v. *Smith*, 57 Ill 245, 91 NE 776, 19 Ann Cas 105. Thus it was held to constitute fraudulent concealment sufficient to toll the statute where a relation of trust and confidence exists between the parties, making it the duty of the defendant to disclose the true state of the case to the plaintiff. *Wilson* v. *Ivy*, 32 Miss 233, or where a cause of

action is fraudulently concealed by one acting in a confidential business relation. *Thompkins* v. *Hollister*, 6 Mich 470, 27 NW 651, or, in short, in any case where it is the duty of the defendant to make known a breach of trust or confidence." On the subject of the statute of limitations see *Hall* v. *Windsor Savings Bank*, 97 Vt 125, 136, 137, 121 A 582, 124 A 593; *Bailey* v. *Groton Mfg. Co.*, 113 Vt 309, 315, 34 A2d 178.

Defendant's contention that the statute of limitations has run against the plaintiff's action, except for the causes which arose after July 1, 1947, is untenable.

In view of the fact that the misappropriated funds of the town exceeds the limit of defendant's liability ($4,000.), there is no occasion for a consideration of any liability arising by reason of the defalcation of funds belonging to the Town School District.

*Judgment reversed. Judgment for the plaintiff to recover Four Thousand Dollars ($4,000) with interest from July 1, 1955, and costs.*

**Holden, J.** dissenting. I am unable to concur with that part of the majority opinion which measures the defendant's total responsibility by the condition imposed against cumulative liability. It is my view that sound principles of law and justice prevent the defendant's liability to be restricted by this device.

The successive undertakings of the defendant during the period 1942 through 1948 form the basis of this action in contract. Each of the several undertakings were written, furnished, and approved in response to the demand of our statutory law relating to town officers. The issuance of fidelity bonds to protect the town and its citizenry in the performance of the duties of town officers during the period is governed by V. S. 47, §3533.

This section provides: "Before the school directors, constable, road commissioner, collector of taxes, treasurer, clerk and overseer of the poor enter upon the duties of their offices, the selectmen shall require each to give a bond conditioned for the faithful performance of his duties; the school directors, to the town school district; the other officers named to the town.

The treasurer and collector shall also be required to give a bond to the town school district for like purpose. All such bonds shall be in sufficient sums and with sufficient sureties as prescribed and approved by the selectmen. If the selectmen at any time consider a bond of any such officer to be insufficient, they may require, by written order, such officer to give an additional bond to such town in such sum as they deem necessary. * * "

The duties of town clerk and treasurer are measured in point of time by the period intervening between annual town meetings. This period constitutes the term of office of these town officers. V. S. 47, §3509, I, II.

Under the statutory requirement, the duties of the principal and the obligation of his surety are geared to the principal's term of office. Phillips, the defaulting official, entered upon the duties of the office to which he was elected with each successive town meeting over the period from 1937 through 1948. The original bond and its several continuation certificates are written in the penal sum of $4000 for the specific term for which the principal was elected, ensuing from the date of his election at the town meeting for that particular year.

The obligations, written by the defendant for each of these years, express no ordinary contractual undertaking between private parties to a private contract. They concern separate undertakings in which the State and the public, generally, had an interest. The contracts were written, and the premiums paid and accepted, to secure a public trust. They were undertaken to fulfill the requirement of the statutory law of the State, and constitute statutory bonds in the legal sense.

The rights and liabilities created by fidelity bonds issued in response to the mandate of the statute are not fixed entirely by the writing of the contract. A statutory undertaking must be considered and given effect according to the wording of the law that requires it. *American Surety Company* v. *Gaskill's Admr.*, 85 Vt 358, 365, 82 A 218; *United States for use of Hill* v. *American Surety Co.*, 200 US 197, 26 S Ct 168, 50 L Ed 437, 440; *US Fidelity and Guaranty Co.* v. *Poetker*, 180 Ind 255, 102 NE 372, 375, appeal dismissed, 235 US 683, 35 S Ct 209, 59 L Ed

423; *First State Bank* v. *Metropolitan Casualty Insurance Co.*, 125 Tex 113, 79 SW2d 835, 98 ALR 1256, 1263; *Charles City* v. *Rasmussen*, 210 Iowa 841, 232 NW 137, 72 ALR 638, 642; *Ramsey's Estate* v. *People*, 197 Ill 572, 64 NE 549, 553; *People* v. *Metropolitan Surety Co.*, 211 NY 107, 105 NE 99, 101; *Williamson* v. *Williams*, 262 Mich 401, 247 NW 704, 89 ALR 442, 443; see also 67 CJS, Officers, §161, a, p. 456; 43 Am Jur, Public Officers, §406, p. 180-181.

V. S. 47, §3533, before and after the 1949 amendment, requires the elected officials designated to furnish a new bond for each term of office, "conditioned for the faithful performance of his duties." V. S. 47, §10,610, Form 57, prescribes the form and substance of a fidelity bond furnished to protect the trust of a public treasurer. The condition of the bond is specified to be the faithful execution of the office and the faithful account for all moneys and other matters which come into his hands and possession by virtue of his office, during the ensuing term. These statutes require a bond conditioned on the future performance or non-performance during the term he is about to enter. See *State* v. *Baldwin*, 116 Vt 112, 114, 70 A2d 242.

The statute looks to the future. The contract is based on the past. The condition upon which the defendant has successfully escaped liability beyond the year 1945 turns on past performance. If the construction and effect adopted by the majority is conceded, the defendant has successfully conditioned its liability for all terms of office held by Phillips after 1945 upon his past defalcations occurring in prior terms of office. The clear purpose and result of this condition is to deprive the public trust of all protection for each term that ensued after Phillips' election in 1946. Such undertakings are not conditioned upon the treasurer's faithful performance of his duties during the ensuing term. These agreements are conditioned upon Phillips' dishonesty in the past, antecedent to the date of the fidelity agreement. All consideration for the premiums paid after 1945 is withdrawn and the very statute upon which these solemn undertakings were made is defeated. I believe such a limitation is unlawful.

It is of course true that the statute entrusts a discretion to the selectmen to fix the penal sum of the bond to be furnished

for each term. This they purported to do by specifying the penal sum of $4000 in each annual undertaking written by the defendant. Whether the selectmen were then cognizant that the legal effect of the restrictive condition might reduce the bond to a worthless security is not of controlling importance in a statutory bond. The statute gave the defendant no right to offer a bond without a penalty. The statute gives the selectmen no right to approve and accept it.

Since this conditional limitation defeats the purpose for which the statute was written, it should not now be invoked, in good conscience or good law, to destroy the very protection the defendant was compensated to furnish. I regard the limitation to be an impairment of the undertaking the State requires of one who has engaged to secure a public trust. Such a condition should have no legal force or effect. *Jones* v. *Hadfield*, 192 Ark 224, 96 SW2d 959, 109 ALR 488, 494; *Lawrence* v. *American Surety Co.*, 263 *Mich* 586, 249 NW 3, 88 ALR 535, 540; *Limestone County* v. *Montgomery*, 226 Ala 266, 146 So 607, 87 ALR 164, 167.

The power of the State to exact a bond to protect the public in the execution of a trust should not be frustrated by the wording of the indenture which is offered and accepted as the statutory safeguard. This is the underlying principle of *American Surety Co. of N. Y.* v. *Gaskill's Admr.*, *supra*, 85 Vt at 364, 365, 82 A at 220, 221. The facts determined by the trial court require its application here, to maintain the integrity of the defendant's true obligation.

I am in agreement with the majority on the application of the Statute of Limitations.

I am in accord with the defendant's position that no liability attaches to its several undertakings for the conversion of tax funds that belonged to the town school district. The town and the town school district are separate corporate entities. *Dickerman* v. *Pittsford*, 116 Vt 563, 564, 80 A2d 529; *Farmer* v. *Haley*, 100 Vt 75, 78, 135 A 12; *North Troy Graded School District* v. *Troy*, 80 Vt 16, 32, 66 A 1033. The statute requires a separate bond from the treasurer to the school district and such a bond is not in suit.

Upon these considerations I believe the plaintiff should have judgment in the principal amount of $7934.98, with interest from July 1, 1955.

## On Motion For Reargument

**Shangraw, J.** The points presented in plaintiff's motion for reargument are summarized as follows:

1. Having in mind the purposes of the bond, it is claimed that the court declined to depart from the letter and wording of the bond and thereby failed to carry out the intent of the parties. To this it is suffiicient to say that the language used in the bond and continuation certificates is clear. If clear and unambiguous the provisions are to be given force and effect. *Allen* v. *Berkshire Mutual Fire Ins. Co.*, 105 Vt 471, 474, 475, 168 A 698, 89 ALR 460. In the absence of fraud, negligence or bad faith, alleged and established, it is not the duty of the court to read into contracts conditions or limitations which the parties have not assumed. *Johnson* v. *Hardware Mutual Casualty Co.*, 108 Vt 269, 281, 282, 187 A 788.

2. Plaintiff urges that V. S. 47, §3533, as amended by No. 73 of the Acts of 1949, should be construed as part of the bond. This phase was fully discussed in the dissenting opinion of Justice Holden and the views expressed therein fully considered by all members of the court.

3. It is also claimed that the case in question is in a distinct and segregated field, that is, the field of public protection wherein the Legislature passes a law to protect the public, and, further, that the law is paramount to the wording of the bond. We direct attention to V. S. 47, §3533, as amended by No. 73 of the Acts of 1949, which, in part, provides that:

> "All such bonds shall be in sufficient sums and with sufficient sureties as prescribed and approved by the selectmen."

It is the duty of the courts to construe contracts, not to make them for the parties. *Johnson* v. *Hardware Mutual Casualty Co., supra.* The rights of the plaintiff must be established, if

at all, against this defendant under the bonds and continuation certificates on which the latter is surety, and not under some bond which might or ought to have been given. *Windsor* v. *Standard Ins. Co.*, 112 Vt 426, 431, 26 A2d 83.

*The motion contains no new points not heretofore considered. No ground for reargument appears. The motion is denied. Let full entry go down.*